UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In The Matter of: | Misc. No. 02-65 |
| | Civil Action Nos. 02-3277 |
| | 02-1643 |
| RELIANCE GROUP HOLDINGS, INC. | 02-1733 |

## STATUS REPORT OF THE LIQUIDATOR OF RELIANCE INSURANCE COMPANY

Pursuant to the Court's Order of August 30, 2002, Appellant M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania (the "Commissioner"), in her official capacity as Statutory Liquidator (the "Liquidator") of Reliance Insurance Company ("Reliance"), by her undersigned counsel, hereby submits this report on the status of the appeals taken to this Court from the February 22, 2002, opinion and orders of the United States Bankruptcy Court for the Eastern District of Pennsylvania.

I.   **INTRODUCTION**

On August 30, 2002, this Court entered an Order dismissing these matters without prejudice pending the lifting of the stays pending appeal (hereinafter, "Stay Order"). A copy of the Stay Order is attached as Exhibit A. The purpose of the Stay Order was to afford the parties time to explore the possibility of a settlement of the disputed issues in these matters, as well as other related disputes. The Stay Order also provided:

> This matter remains ACTIVE. It is further understood that all discovery and settlement discussions will continue and if intervention of the Court is needed or desired, the parties may ask for assistance by either filing the appropriate motions, writing to the Court or by setting a telephone conference. <u>The parties</u>

> shall keep the Court advised of the status of this case and may request a firm trial date or settlement conference by writing to the Court by telephone conference.

See Exhibit A (emphasis added). The purpose of this submission is to advise the Court of the status of the above captioned matters.

**I.     Factual and Procedural Background**

These bankruptcy matters involve appeals and cross appeals from the opinion and orders entered by U.S. Bankruptcy Judge Kevin J. Carey ("Pennsylvania Bankruptcy Court") on February 22, 2002 in two separate adversary proceedings, specifically Adversary Proceeding 01-558 (the "Constructive Trust Action") and 01-559 (the "Emergency Petition"). See In re Reliance Group Holdings, Inc., 273 B.R. 374 (Bankr. E.D.Pa. 2002). These adversary proceedings were originally filed in the Commonwealth Court of Pennsylvania, the state court overseeing the Reliance insurance receivership proceedings. Koken v. Reliance Insurance Company, No. 269 MD 2001 (Pa. Commw. Ct.); see 40 P.S. §§ 221.1 – 221.63.

On June 29, 2001, Reliance Group Holdings, Inc. ("RGH"), the ultimate corporate parent of Reliance and a debtor in a Chapter 11 bankruptcy proceeding pending in the U.S. Bankruptcy Court for the Southern District of New York (No. 01-13404 (S.D.N.Y.)) ("New York Bankruptcy Court"),[1] with the assistance of the Official Unsecured Bank Committee and the Official Unsecured Creditors' Committees (the "Committees"), removed the Constructive Trust Action and the Emergency Petition to this District, seeking an immediate transfer to the New York Bankruptcy Court. Under this District's standing order, the Constructive Trust Action and

---

[1] The RGH bankruptcy proceeding is jointly administered with the bankruptcy of a related entity, Reliance Financial Services Corporation ("RFSC"). Reliance is a wholly owned subsidiary of RFSC, which in turn is a wholly owned subsidiary of RGH. Under this holding company structure, Reliance was the primary operating entity for the ultimate parent company RGH.

2

Emergency Petition were automatically referred to the Pennsylvania Bankruptcy Court, where they were assigned to Judge Carey.

On July 12, 2001, the Commissioner filed motions to remand both the Constructive Trust Action and the Emergency Petition to the Commonwealth Court. On February 22, 2002, Judge Carey ruled on the motions to remand, as well as RGH's motion to transfer venue to the New York Bankruptcy Court. Judge Carey filed an opinion and two orders: one regarding the Constructive Trust Action and the other regarding the Emergency Petition. See In re Reliance Group Holdings, supra.

With respect to the Constructive Trust Action (01-558), Judge Carey granted the Commissioner's motion to remand, in part, remanding to the Commonwealth Court certain issues of state law, including whether a certain tax arrangement between Reliance and RGH was inconsistent with the provisions of Pennsylvania's Insurance Holding Company Act, see id. at 407-08, whether a constructive or resulting trust was appropriate under Pennsylvania law, and whether the Commissioner was entitled to interim injunctive relief. See id. Residual issues of federal law, such as certain issues under 11 U.S.C. § 541, were not remanded, but were ordered transferred to the New York Bankruptcy Court after decision on the remanded issues by the Commonwealth Court. See id. Judge Carey denied the Commissioner's motion to remand the Emergency Petition (01-559), and ordered the matter transferred to the New York Bankruptcy Court. See id. The parties, including the Commissioner, RGH and the Committees, promptly filed appeals and cross-appeals with this Court from Judge Carey's February 22 orders.

A. **The Stay of the Bankruptcy Appeals and Settlement Discussions**

Shortly after the appeals in these matters were filed and assigned to this Court, Your Honor conducted a telephone conference call with the parties. During the conference call, after

discussing the relevant issues with the Court, the parties expressed the belief that the matters before the Court could potentially be narrowed through settlement discussions. The Court agreed, directing the parties to negotiate until progress on the disputed issues could no longer be made or until a comprehensive resolution of all disputed issues was reached. For this purpose, the parties agreed to a series of voluntary thirty day stays of the Constructive Trust Action and the Emergency Petition bankruptcy appeals. On August 30, 2002, this Court entered the Stay Order to afford the parties additional time for settlement negotiations. See Exhibit A.

After intensive and complex settlement negotiations, on April 1, 2003, the Liquidator and the Committees agreed upon the terms of a settlement of the Constructive Trust Action and other disputed issues between the Reliance and RGH estates ("Settlement Agreement"). The parties also agreed to jointly approach this Court regarding any disposition of the Emergency Petition.

The Settlement Agreement was made expressly subject to the approval of both the New York Bankruptcy Court and the Commonwealth Court of Pennsylvania. The last of these approvals was received on June 19, 2003; and the Settlement Agreement became final and effective on August 12, 2003 (the date on which certain objections to and an appeal from the Commonwealth Court's order approving the Settlement Agreement were withdrawn).

A copy of the Settlement Agreement is attached as Exhibit B. The effects of the Settlement Agreement on the Constructive Trust Action and the Emergency Petition are discussed in detail below.

## II.   STATUS OF THE RELEVANT BANKRUPTCY APPEALS

### A.   The Constructive Trust Action

The Constructive Trust Action was filed in the Commonwealth Court of Pennsylvania by the Commissioner on June 11, 2001. The Constructive Trust Action sought the imposition of a

constructive or resulting trust for the benefit of Reliance over more than $95 million in cash in the possession of RGH.

Section 4.e of the Settlement Agreement addresses the current status and eventual resolution of the Constructive Trust Action and the voluntary stay of the corresponding bankruptcy appeal. The Settlement Agreement provides:

> The [voluntary stay, also known as the] Standstill Agreement . . . shall remain in effect until the effectiveness of the settlement as provided in Section 1, at which time the [voluntary stay or] Standstill Agreement shall by joint stipulation terminate and the [Constructive Trust Action] shall be dismissed with prejudice upon joint motion or stipulation of the parties.

See Settlement Agreement, § 4.e. As stated above, the Settlement Agreement became effective on August 12, 2003. Accordingly, as required by the court-approved Settlement Agreement, the parties will prepare and, in the near future, file with this Court the necessary papers to resolve the Constructive Trust Action and corresponding bankruptcy appeal (01-558).

### B. Emergency Petition

Unlike the Constructive Trust Action, the Settlement Agreement did not conclusively resolve the merits of the Emergency Petition matter or the bankruptcy appeal involving the Emergency Petition (01-559). While the Settlement Agreement does address the status of the Emergency Petition, the parties to the Settlement Agreement are still considering the appropriate resolution of this matter. Recently and notwithstanding this Court's exclusive jurisdiction over the Emergency Petition, certain individuals subject to a Commonwealth Court order preserving the status quo, which order is extant before this Court, as well as other third parties, have sought to have the merits of the Emergency Petition litigated outside of this Court and in the United States District Court for the Southern District of New York. A discussion of the background, current status and recent developments with respect to the Emergency Petition is set forth below.

1.  **Background to Emergency Petition Matter**

During 2000, several securities class action complaints were filed by shareholders of RGH against certain of its officers and directors. These securities class actions were consolidated in the United States District Court for the Southern District of New York under the caption In re Reliance Group Holdings, Inc. Securities Litigation, No. 00-CV-4653 (S.D.N.Y.( (the "Securities Class Action"). The complaints in these actions alleged, inter alia, that certain directors and officers of RGH engaged in a scheme to defraud investors and artificially inflate the price of RGH stock and other securities, in violation of § 10(b) of the Securities and Exchange Act of 1934.

During 2001, before Reliance was placed into Rehabilitation, the Boards of Directors of RGH and Reliance were essentially identical. Pennsylvania Insurance Department representatives were carefully monitoring the activities of Reliance, and were permitted to attend only the Reliance Board meetings. However, these very same representatives were excluded from the RGH Board meetings.

On May 29, 2001, the Reliance and RGH Boards held meetings to deliberate on the question of Reliance's future, and to decide whether to consent to statutory receivership. The RGH Board meeting took place first. During that meeting, unbeknownst to the Pennsylvania Insurance Department or its representatives, the defendant directors and officers in the Securities Class Action authorized an early settlement pursuant to which the RGH officers and directors would obtain releases for themselves in exchange for paying the Securities Class Action plaintiffs $17.4 million of the insurance proceeds from certain insurance policies.[2] The RGH

---

[2] The insurance policies that are the subject of this matter were issued by certain Underwriters at Lloyd's London (the "Underwriters"), and include primary policy No. 823/FD9701593, and excess policies Nos. 823/F01201D96, 823/F01307D97, 823/FD9798178 and 823/FD9900896 (collectively, the "Policies"). See Emergency Petition (Exhibits). There is no named insured under the Policies. Rather, the insured is the "Company," which is defined as

6

directors and officers agreed on this multi-million dollar settlement despite having taken no discovery or even filing a motion to dismiss or answer with affirmative defenses to probe the strength or weakness of the claims in the Securities Class Action.

The terms and conditions of the proposed settlement were set forth in a Memorandum of Understanding ("MOU") among the plaintiffs and defendants in the Securities Class Action and in a Funding and Release Agreement among the Securities Class Action defendants and the Underwriters.

Immediately after the May 29, 2001 RGH Board meeting, at a separate meeting, the Reliance Board consented to Reliance's entry into statutory receivership. There was no disclosure made of the proposed settlement, the MOU, or the Funding Agreement during the Reliance Board meeting even though the directors of Reliance were identical to the directors of RGH and had attended the RGH Board meeting only a few short hours before.

The Commissioner did not learn of the proposed settlement until several days later. On June 4, 2001, she filed an Emergency Petition for Preservation of Insurance Policy Assets of Estate ("Emergency Petition") with the Commonwealth Court, seeking a declaration that the Policies and the proceeds of the Policies ("Proceeds") were assets of the Reliance estate and therefore subject to the Commonwealth Court's Rehabilitation Order of May 29, 2001, and subsequent Order of Liquidation, filed October 3, 2001.[3] If such a declaration was obtained, the proposed settlement of the Securities Class Action could not occur without approval of the Liquidator and the Commonwealth Court.

---

RGH and its subsidiaries, including Reliance. The Policies provide the following coverage: Directors and Officers and Company Liability; Errors and Omissions; Fiduciary Liability; and Employment Practices Liability.

[3] Copies of the Rehabilitation Order, dated May 29, 2001, and the Liquidation Order, dated October 3, 2001, are attached as Exhibits C and D, respectively.

114582.01600/21236102v3

Upon filing of the Emergency Petition, the Commonwealth Court scheduled a prompt hearing on the matter to be held on June 6, 2001. On June 5, 2001, one day prior to the scheduled hearing, upon request of the defendants in the Securities Class Action, the Commissioner entered into a Stipulation with the defendants and the Underwriters by which the parties agreed to cease any further action to consummate the proposed settlement under the MOU. Specifically, the Stipulation provides "that, during the Extension Period, [RGH], its officers, directors, employees, attorneys and agents, as well as Lloyd's Underwriters, shall cease any further action to effectuate or consummate any settlement of the [Securities Class Action]." See Exhibit E (Stipulation and Order). The Commonwealth Court accepted the Stipulation by Order dated June 8, 2001. See id.

The Stipulation and Order of the Commonwealth Court were intended to preserve the status quo pending the resolution of the Emergency Petition. At the time the Emergency Petition matter was removed to this Court, the Stipulation and Order were in full force and effect and remain in effect given that this matter is active as provided in this Court's Stay Order. See Exhibit A.

### 2. Recent Developments Relating to the Emergency Petition

In the Settlement Agreement, the Liquidator and the Committees addressed the status of the Emergency Petition. Section 4.e of the Settlement Agreement provides:

> Notwithstanding the foregoing [i.e., the dismissal of the Constructive Trust Action and the termination of the voluntary stay], the parties agree that the Emergency Petition . . . filed by the Liquidator in the Commonwealth Court within matter No. 269 MD 2001, removed to the United States District Court for the Eastern District of Pennsylvania (the "EDPa Court"), and transferred to the [New York] Bankruptcy Court (which transfer was appealed to the EDPa Court) shall not be dismissed but shall remain pending . . . and the parties agree that no party shall file any further brief, motion, application, complaint, or proceeding, or take any other action, in any court or other tribunal, that seeks any ruling or order of any kind with respect to the subject matter of the Emergency Petition until such

8

> time as the parties agree to a dismissal or other resolution of the matter. Nothing in this Section shall be construed to prohibit any party from making any appropriate response or filing in any action or proceeding commenced by nonparties to this Agreement regarding the subject matter of the Emergency Petition . . . or to prohibit any party from commencing a new action or proceeding to prevent the payment of proceeds from the insurance policies that are the subject of the Emergency Petition, or to prohibit any party from opposing or otherwise responding to or proceeding in any such new action or proceeding.

See Settlement Agreement, § 4.e. Shortly after the Settlement Agreement became effective and while the parties to the Settlement Agreement were assessing the appropriate resolution of the Emergency Petition, the plaintiffs in the Securities Class Action ("Securities Plaintiffs"), in September, 2003, filed a motion to enforce the MOU, seeking an order from the United States District Court for the Southern District of New York ("New York District Court") compelling the use of the Polices and Proceeds at issue in the Emergency Petition for the settlement of the Securities Class Action.

On November 19, 2003, in an opinion resolving a motion to join Underwriters in the Securities Class Action for purposes of settlement, the New York District Court concluded that it would be necessary to resolve the question of the ownership of the Policies in resolving the Securities Class Action plaintiffs' motion to enforce the MOU. See Exhibit F. Upon learning of the November 19 decision, the Liquidator informed the New York District Court on December 12, 2003 that issues of ownership of the Policies and Proceeds formed the merits of the Emergency Petition, and that this Court, by virtue of the active Emergency Petition bankruptcy appeal, had exclusive in rem jurisdiction over the Policies and Proceeds. The New York District Court agreed to take briefing on the issues of jurisdiction and ownership of the Policies and Proceeds.

On January 16, 2003, the Liquidator moved to intervene into the Securities Class Action for the purpose of disputing the New York District Court's exercise of in rem jurisdiction over

9

the Policies and Proceeds. A copy of the Liquidator's memorandum of law addressing the issue of this Court's in rem jurisdiction is attached as Exhibit G. In addition, the defendants in the Securities Class Action, notwithstanding that the Stipulation and Order, to which they are parties, prohibits "any further action to effectuate or consummate any settlement of the [Securities Class Action]," see Exhibit E, filed a brief in support of the Securities Plaintiffs' motion to enforce the MOU and the use of the Policies and Proceeds to effectuate that settlement. Copies of the briefs filed by the Securities Class Action plaintiffs (Exhibit H), the Securities Class Action defendants (composite Exhibit I), and the Underwriters (Exhibit J) concerning the ownership of the Policies and Proceeds are attached.

Presently, the Securities Class Action plaintiffs' motion to enforce the MOU, including the question of ownership of the Policies and Proceeds, and the Liquidator's motion to intervene in the Securities Class Action for the purpose of disputing the New York District Court's ability to exercise of jurisdiction over the Emergency Petition, the Policies and the Proceeds remain pending.

### III. CONCLUSION

The Liquidator and the Committees continue to discuss the appropriate resolution of the Emergency Petition in accordance with the provisions of the Settlement Agreement. Both the Liquidator, charged by statute with the duty of marshalling the assets of Reliance for the eventual distribution to Reliance's innocent and injured policyholders and creditors, and the Committees, who represent the majority interests of the creditors of the RGH/RFSC bankruptcy estates, continue to assert ownership interests in the Policies and Proceeds at issue in the Emergency Petition. In view of the recent developments involving the Emergency Petition in the New York District Court and the Liquidator's firm conviction that this Court is presently the only

10

114582.01600/21236102v3

appropriate court which may consider and resolve issues concerning the ownership of the Policies and the Proceeds, the Liquidator respectfully requests that should this Court be requested to take any action with respect to the Emergency Petition, that she and the Committees be provided with notice and opportunity to be heard with respect to the Emergency Petition and related matters.

In compliance with the provisions of the Stay Order, the Liquidator shall, from time to time, provide the Court with further reports on the status of these pending matters.

Respectfully submitted,

Jerome R. Richter
Ann B. Laupheimer
Anthony Vidovich
BLANK ROME LLP
One Logan Square
Philadelphia, PA 19103
(215) 569-5500 (Telephone)
(215) 569-5694 (Fax)

Attorneys for Appellant
M. DIANE KOKEN, Insurance Commissioner
of Pennsylvania, in her official capacity as
Liquidator of Reliance Insurance Company

Dated: January 30, 2004

114582.01600/21236102v3