# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

—————————————————————— :
                                                          :
IN RE RELIANCE GROUP HOLDINGS, INC.          :
SECURITIES LITIGATION                                  :
                                                          :     MASTER FILE NO.
                                                          :     00-CV-4653 (TPG)
—————————————————————— :

**MEMORANDUM OF LAW OF LIQUIDATOR OF RELIANCE INSURANCE
COMPANY IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE
MEMORANDUM OF UNDERSTANDING AND
RELATED SETTLEMENT FUNDING AND RELEASE AGREEMENT
AND IN SUPPORT OF LIQUIDATOR'S
<u>MOTION TO DISMISS OR STAY PLAINTIFFS' MOTION</u>**

BLANK ROME LLP
Daniel J. Brown, Esquire
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
 -and-
Jerome R. Richter, Esquire
Ann B. Laupheimer, Esquire
Anthony Vidovich, Esquire
One Logan Square
Philadelphia, PA 19103
Telephone:  (215) 569-5500
Facsimile:  (215) 569-5694

Attorneys for Intervenor, M. Diane Koken,
Insurance Commissioner of the
Commonwealth of Pennsylvania,
in her official capacity as
Statutory Liquidator of
Reliance Insurance Company

Dated:  January 16, 2004

# TABLE OF CONTENTS

I.     INTRODUCTION. ...........................................................................................................1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY. ...................................3

    A.    Reliance Insurance Company. .................................................................3

    B.    The Statutory Receivership of Reliance. .................................................3

        1.    Rehabilitation. .............................................................................3

        2.    The Liquidation of Reliance Insurance Company. .......................................5

    C.    The Emergency Petition for the Preservation of Insurance Policy Assets of the Reliance Estate. ..................................................................................6

        1.    The Proceedings In Bankruptcy Court. .........................................................8

III.   ARGUMENT. .................................................................................................................11

    A.    The Eastern District of Pennsylvania Has Exclusive Jurisdiction Over the Questions of Ownership of the Policies and Proceeds. ...........................................11

        1.    This Court Has Determined that It Must Exercise In Rem Jurisdiction to Resolve the Motion to Enforce the MOU. .................................................13

        2.    The Policies and Proceeds Are Already Subject to the In Rem Jurisdiction of the Eastern District of Pennsylvania. .......................................14

    B.    Alternatively, Under the First-Filed Rule, This Court Should Defer to the First in Time Exercise of Jurisdiction Over the Policies and Proceeds by the Eastern District of Pennsylvania. .........................................................................20

        1.    The First-Filed Rule. ...................................................................20

        2.    Application of the First-Filed Rule Favors the Jurisdiction of the Eastern District of Pennsylvania. .........................................................................22

        3.    Deferring to the Jurisdiction of the Eastern District of Pennsylvania Will Prevent Plaintiffs' from Benefiting from Impermissible Forum Shopping. 24

IV.    CONCLUSION. ............................................................................................................28

i

## TABLE OF AUTHORITIES

### FEDERAL CASES

Adam v. Jacob, 950 F.2d 89 (2d Cir. 1991)........................................................21

In re Brumlik, 132 B.R. 495 (M.D. Ga. 1991)...................................................16

Carvel v. The Thomas and Agnes Carvel Foundation, 188 F.3d 83 (2d Cir. 1999)......................19

Cessna Aircraft Co. v. Brown, 348 F.2d 689 (10th Cir. 1965)........................................21

Chesley v. Union Carbide Corp., 927 F.2d 60 (2d Cir. 1991)........................................12

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)....................20

Continental Time Corp. v. Swiss Credit Bank, 543 F. Supp. 408 (S.D.N.Y. 1982).....................22

Donovan v. City of Dallas, 377 U.S. 408 (1964)..............................................12, 17

Drabik v. Murphy, 246 F.2d 408 (2d Cir. 1957)...........................................16, 17, 26

Federal Deposit Insurance Corp. v. Four Star Holding Co., 178 F.3d 97 (2d Cir. 1999)........12, 18

Griggs v. Provident Consumer Discount Co., 459 U.S. 56 (1982)....................................17

Insurance Corp. of Hannover, Inc. v. Latino Americana de Reaseguros, S.A., 868 F.
    Supp. 520 (S.D.N.Y. 1994).........................................................12, 17, 18

Kellen Co. Inc. v. Calphalon Corp., 54 F. Supp. 2d 218 (S.D.N.Y. 1999)...........................22

Landis v. North American Co., 299 U.S. 248 (1936)................................................20

Lankenau v. Coggshell & Hicks, 350 F.2d 61 (2d Cir. 1965).....................................13, 14

Levy v. Lewis, 635 F.2d 960 (2d Cir. 1980)...............................................12, 13, 22, 23, 28

Magnetic Engineering & Manufacturing Co. v. Dings Manufacturing Co., 178 F.2d 866
    (2d Cir. 1950).....................................................................16

Mattel, Inc. Louis Marx & Co., 353 F.2d 421 (2d Cir. 1965)....................................20, 21

.114582.00601/21232709v5

Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc., 804 F.2d 16
(2d Cir. 1986)..................................................................................................................24

Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456 (1939) ...........12, 13, 14, 15, 17, 19

In re Reliance Group Holdings, Inc., 273 B.R. 374 (Bankr. E.D.Pa.)...............................................9

Semmes Motors Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970) .........20, 21, 22, 23, 24, 28

Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998)...............................................19

Sun Forest Corp. v. Shvili, 152 F. Supp. 2d 367 (S.D.N.Y. 2001)..........................................16, 27

Sutter Corp. v. P&P Industrial, Inc., 125 F.3d 914 (5th Cir. 1997)..............................................20

In re United States Lines, Inc., 197 F.3d 631 (2d Cir. 1999).........................................................13

## STATE CASES

Foster v. Mutual Fire, Marine & Inland Insurance Co., 614 A.2d 1086 (Pa. 1992).........................4

Majique Fashions, Ltd. v. Warwick & Co., Ltd., 414 N.Y.S.2d 916 (App. Div. 1979)................13

## DOCKETED CASES

Haymond v. Lundy, Civil Action No. 99-5048, 2002 WL 1964336 (E.D.Pa. Aug. 23,
2002) .............................................................................................................................13, 15

In re Reliance Group Holdings, Inc. Securities Litigation, No. 00-CV-4653 (hereinafter,
the "Securities Class Action")....................................................................................................6

## FEDERAL STATUTES

28 U.S.C. § 1334(c) .........................................................................................................................9

28 U.S.C. § 1412.............................................................................................................................9

28 U.S.C. § 1446...........................................................................................................................16

28 U.S.C. § 1452.............................................................................................................................9

28 U.S.C. § 158...............................................................................................................................9

114582.00601/21232709v5

McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq ................................................................5

## STATE STATUTES

40 P.S. § 1 et seq.......................................................................................................3

40 P.S. § 41 et seq......................................................................................................4

40 P.S. § 42................................................................................................................4

40 P.S. §§ 221.1 - 221.63......................................................................................3, 4

114582.00601/21232709v5

Intervenor, M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, in her official capacity as Statutory Liquidator of Reliance Insurance Company (hereinafter, "Commissioner" or "Liquidator"), through her undersigned attorneys, respectfully submits this Memorandum of Law in Opposition to Plaintiffs' Motion to Enforce Memorandum of Understanding and Related Settlement Funding and Release Agreement (hereinafter "Plaintiffs' motion to enforce the MOU").[1]

## I.    INTRODUCTION.

In its November 19, 2003, Opinion granting Plaintiffs' motion to join certain syndicates and underwriters of Lloyds, London ("Underwriters") for the purpose of deciding Plaintiffs' motion to enforce MOU, this Court concluded that the resolution of Plaintiffs' motion necessarily required not only the participation of the Underwriters, but also the resolution of questions of ownership of certain insurance policies issued by Underwriters providing, inter alia, directors and officers liability coverage allegedly available to Defendants in this case for use in a settlement of Plaintiffs' claims. While this court has determined that these ownership issues must be resolved, this Court lacks the necessary jurisdiction to untangle the ownership rights flowing from the insurance policies and their proceeds, including the rights of the Liquidator and the policyholders and creditors of the Reliance Insurance Company insolvency estate. These rights of ownership, by definition an in rem jurisdictional matter, fall within the exclusive jurisdiction

---

[1]    While the Liquidator has limited her arguments below in support of a dismissal or stay of Plaintiffs' motion to enforce the MOU to the question of this Court's rightful exercise of jurisdiction, the Liquidator concurs in the position of the Underwriters that certain material preconditions to the effectiveness of the MOU and related Settlement Funding and Release Agreement have not been satisfied by Plaintiffs or Defendants, thus precluding enforcement of the MOU and related agreements.

1

114582.00601/21232709v5

of the United States District Court for the Eastern District of Pennsylvania, and no other court, including this Court, may intrude upon matters within the in rem jurisdiction of that Court.

Undoubtedly aware of the jurisdiction of the Eastern District of Pennsylvania over these matters, Plaintiffs nevertheless filed their motion to enforce the MOU in an attempt to gain some advantage from impermissible forum shopping. For over two years, Plaintiffs have refused or failed to pursue whatever rights they may claim in the relevant policies and proceeds in the only court with jurisdiction over these matters, the United States District Court for the Eastern District of Pennsylvania. Instead, Plaintiffs have asserted before this Court that some action by the Liquidator has prohibited Plaintiffs from advancing this Securities Class Action case to trial or settlement. Capitalizing on this Court's desire to move this case forward, Plaintiffs have filed their motion to enforce the MOU, asking this Court to ignore the exercise of jurisdiction and operative orders of a federal court of equal rank.

To protect the interests of the Reliance estate, its policyholders, creditors and the public generally, as is her statutory mandate, the Liquidator has come before this Court to demand it recognize its lack of jurisdiction over the relevant policies and insurance proceeds, and to request that this Court dismiss or stay Plaintiffs' motion to enforce the MOU and direct Plaintiffs to pursue their remedies in the United States District Court for the Eastern District of Pennsylvania, the only court with exclusive jurisdiction to resolve questions of ownership of the insurance policies and proceeds.

2

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

     A.    Reliance Insurance Company.

Reliance Insurance Company ("Reliance") was one of the nation's oldest and largest property and casualty insurance companies, and had (and has) as its primary regulator the Insurance Department of the Commonwealth of Pennsylvania. Reliance was a wholly owned subsidiary of Reliance Financial Services Corporation, which in turn was a wholly owned subsidiary of Reliance Group Holdings Inc. ("RGH"), a publicly traded holding company. Reliance was the primary operating entity of the holding company RGH.

     B.    The Statutory Receivership of Reliance.

        1.    Rehabilitation.

On May 29, 2001, upon petition of the Commissioner, Reliance was placed into rehabilitation by Order of the Commonwealth Court of Pennsylvania, pursuant to Article V and the Pennsylvania Insurance Department Act of 1921, 40 P.S. §§ 221.1 - 221.63. The May 29 Order appointed the Commissioner as Rehabilitator of Reliance, and placed all of the assets and business affairs of Reliance under the control of the Commissioner, as Rehabilitator, and the Commonwealth Court. A copy of the Order of Rehabilitation, entered May 29, 2001, is attached as Exhibit A to the Certification of Exhibits to Memorandum of Law in Opposition to Plaintiffs' Motion to Enforce Memorandum of Understanding and Related Settlement Funding and Release Agreement (hereinafter "Cert."). See Cert. Exhibit A (Order of Rehabilitation).

The Commissioner, as Rehabilitator (or now as Liquidator), derives her authority from the Pennsylvania Insurance Department Act, 40 P.S. § 1 et seq. (the "Act"). The Insurance Department Act, which the Commissioner is charged to enforce, governs virtually every facet of

3

the business of insurance in Pennsylvania, including, "the licensing, qualification, regulation, examination, suspension, and dissolution of insurance companies . . . ." 40 P.S. § 1. Essential to this entire regulatory scheme are the provisions of Article V, 40 P.S. §§ 221.1 - 221.63. Article V gives the Commissioner, and only the Commissioner, the power to petition the Commonwealth Court to either rehabilitate or liquidate a troubled insurance company. In either event, the Commissioner is empowered to marshal and protect the assets of the troubled company. 40 P.S. §§ 221.15, 221.16, 221.20, and 221.23. The sole purpose of this power, declared by statute and by the Pennsylvania Supreme Court, is not the protection of the interest of the failed insurance company, but rather the protection of the company's policyholders and creditors, and the public.

> The [Pennsylvania] General Assembly, in recognition of the specialized complexities involved in insurance generally, and in the regulation of this industry in particular, assigned the task of overseeing the management of that industry, in this Commonwealth, to the Insurance Department, the agency having expertise in that field. 40 P.S. § 41, et seq. The Insurance Commissioner, an appointed person pursuant to 40 P.S. § 42 is, therefore, afforded broad supervisory powers to regulate the insurance business in this Commonwealth, including the power to protect "the interests of insureds, creditors, and the public generally. . . ." 40 P.S. § 221.1(c). Accordingly, the delegation of such caretaking authority necessarily includes exercising a direct role in the [receivership] of insolvent insurers.

Foster v. Mutual Fire, Marine & Inland Ins. Co., 614 A.2d 1086, 1091 (Pa. 1992).

As authorized pursuant to the Insurance Department Act, the Order of Rehabilitation directed the Commissioner to take possession of all of the assets of Reliance, "of whatever nature and wherever located, whether held directly or indirectly . . . ." See Cert. Exhibit A, ¶ 5-6. In the Rehabilitation Order, the Commonwealth Court further ordered all persons holding assets of Reliance to disclose the existence of assets and to turn the assets of Reliance over to the

4

Commissioner as Rehabilitator.  See Cert. Exhibit A, ¶ 6.  In addition, the Commonwealth Court,

exercising its jurisdiction to the fullest extent under the Insurance Department Act, enjoined all

persons and entities from "obtaining preferences, judgments, attachments, garnishments or liens"

which may impair the assets of Reliance.  Id., ¶¶ 20, 29.  The Commonwealth Court further

enjoined all persons or entities from interfering with the Commissioner's control over the assets

of Reliance.  Id., ¶¶ 26-27; see 40 P.S. §§ 221.15, 221.20 (authorizing insurance receiver to

marshal assets of financially troubled insurer regulated under Pennsylvania law).

        2.    The Liquidation of Reliance Insurance Company.

      On October 3, 2001, after determining that further attempts to rehabilitate Reliance would

be futile, the Commissioner filed a Petition seeking an order for the Liquidation of Reliance in

the Commonwealth Court.  See Cert. Exhibit B (Order of Liquidation).  Upon review of the

Commissioner's Petition for Liquidation, the Commonwealth Court, on October 3, 2001, entered

an Order of Liquidation finding Reliance insolvent and appointing the Commissioner as

Liquidator of Reliance.  See Cert. Exhibit B.  The Liquidation Order superceded the

Rehabilitation Order and vested the Commissioner as Liquidator "with title to all property,

assets, contracts and rights of action of Reliance, of whatever nature and wherever located,

whether held directly or indirectly, as of the date of the filing of the Petition for Liquidation."[2]

See Cert. Exhibit C, ¶ 5.

      In the Liquidation Order, the Commonwealth Court further ordered that:

---

[2]  The Liquidation Order is authorized by Article V of the Act which is based on the Uniform Insurers Liquidation Act ("UILA").  Because insurance companies are exempt from coverage under the U.S. Bankruptcy Code, and because the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq., commits the regulation of the insurance industry to the states, the UILA is one of a series of model insurance insolvency acts drafted to provide for a uniform and consistent interstate procedure for the liquidation of insolvent insurance companies.

114582.00601/21232709v5

> All assets of Reliance are hereby found to be in custodia legis of this Court; and this Court specifically asserts, to the fullest extent of its authority, (a) in rem jurisdiction over all assets of the Company wherever they may be located and regardless of whether they are held in the name of the Company or any other name; (b) exclusive jurisdiction over all determinations of the validity and amount of claims against Reliance; and (c) exclusive jurisdiction over the determination of the distribution priority of all claims against Reliance.

See Cert. Exhibit B, ¶ 5. As in the Order of Rehabilitation, the Commonwealth Court ordered that all assets of Reliance be turned over to the Liquidator and enjoined all persons or entities from encumbering or disposing of any asset of Reliance without the prior written consent of the Liquidator. Id., ¶ 7.

C.   The Emergency Petition for the Preservation of Insurance Policy Assets of the Reliance Estate.

During 2000, several class action complaints were filed by shareholders of RGH against certain of its officers and directors, the Defendants in this matter. These actions were consolidated before this Court in the Southern District of New York under the caption In re Reliance Group Holdings, Inc. Securities Litigation, No. 00-CV-4653 (hereinafter, the "Securities Class Action"). The complaints in these actions alleged, inter alia, that Defendants engaged in a scheme to defraud investors and artificially inflate the price of RGH stock and other securities, in violation of § 10(b) of the Securities and Exchange Act of 1934.

During 2001, before Reliance was placed into Rehabilitation, the Boards of Directors of RGH and Reliance were essentially identical. Pennsylvania Insurance Department representatives were carefully monitoring the activities of Reliance, but were permitted to attend only the Reliance Board meetings. These representatives were excluded from the RGH Board meetings.

6

114582.00601/21232709v5

On May 29, 2001, the Reliance and RGH Boards held meetings to deliberate on the question of Reliance's future, and to decide whether to consent to rehabilitation. The RGH Board meeting took place first. During that meeting, unbeknownst to the Insurance Department or its representatives, Defendants in the Securities Class Action authorized an early settlement pursuant to which the RGH officers and directors would obtain releases for themselves in exchange for paying Plaintiffs $17.4 million of the insurance proceeds from the Policies.[3] The RGH directors and officers agreed on this princely sum despite having taken no discovery in the Securities Class Action or even filing a motion to dismiss or answer with affirmative defenses to probe the strength or weakness of Plaintiffs' claims.

The terms and conditions of the proposed settlement were set forth in a Memorandum of Understanding ("MOU") among Plaintiffs and Defendants in this matter and in a Funding and Release Agreement among Defendants and the Underwriters.

Immediately after the May 29, 2001 RGH Board meeting, at a separate meeting, the Reliance Board consented to Reliance's entry into rehabilitation. There was no mention of the proposed settlement, the MOU, or the Funding Agreement during the Reliance Board meeting even though the directors of Reliance were identical to the directors of RGH and had attended the RGH Board meeting only a few short hours before.

---

[3] The insurance policies that are the subject of this matter were issued by the Lloyd's Underwriters (the "Underwriters"), and include primary policy No. 823/FD9701593, and excess policies Nos. 823/F01201D96, 823/F01307D97, 823/FD9798178 and 823/FD9900896 (collectively, the "Policies"). See Cert Exhibit C (Emergency Petition, Exhibits). There is no named insured under the Policies. Rather, the insured is the "Company," which is defined as RGH and its subsidiaries, including Reliance. The Policies provide the following coverage: Directors and Officers and Company Liability; Errors and Omissions; Fiduciary Liability; and Employment Practices Liability.

7

114582.00601/21232709v5

Accordingly, the Commissioner did not learn of the proposed settlement until several days later. On June 4, 2001, she filed the Emergency Petition with the Commonwealth Court, seeking a declaration that the Policies and the proceeds of the Policies ("Proceeds") were assets of the Reliance estate and therefore subject to the Commonwealth Court's Rehabilitation Order of May 29, 2001. See Cert. Exhibit C (Emergency Petition Of The Rehabilitator For Preservation Of Insurance Policy Assets Of The Estate (filed June 4, 2001)) (hereinafter "Emergency Petition"). If such a declaration was obtained, the proposed settlement of the Securities Class Action could not occur without approval of the Liquidator and the Commonwealth Court. The Commonwealth Court scheduled an immediate hearing on the matter to be held on June 6, 2001.

On June 5, 2001, one day prior to the scheduled hearing, upon request of Defendants in this matter, the Commissioner entered into a Stipulation with Defendants and the Underwriters by which the parties agreed to cease any further action to consummate the proposed settlement. The Commonwealth Court accepted the Stipulation by Order dated June 8, 2001. See Cert. Exhibit D (Stipulation and Order).

1.    The Proceedings In Bankruptcy Court.

On June 12, 2001, while the Stipulation was pending, RGH and its subsidiary, Reliance Financial Services Corporation, filed in the United States Bankruptcy Court for the Southern District of New York voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, Title 11.

8

On June 29, 2001, RGH removed the Emergency Petition to United States District Court for the Eastern District of Pennsylvania[4] under 28 U.S.C. § 1452(a), and simultaneously filed a motion to transfer venue for the matter to the United States Bankruptcy Court for the Southern District of New York, pursuant to 28 U.S.C. § 1412.[5] See Cert. Exhibit E (Notice of Removal) and Exhibit F (Motion to Transfer).

On July 12, 2001, the Liquidator filed a motion to remand the Emergency Petition to the Commonwealth Court (since it was expressly non-removable under the plain meaning of § 1452(a)), for remand under 28 U.S.C. § 1452(b),[6] and for abstention under 28 U.S.C. § 1334(c). See Cert. Exhibit G (Motion to Remand). The Liquidator also opposed the motion to transfer the case to the Southern District of New York Bankruptcy Court since the Emergency Petition was not a core bankruptcy matter subject to transfer under § 1412.

On February 22, 2002, the Eastern District of Pennsylvania Bankruptcy Court issued an Order denying the Liquidator's motion to remand the Emergency Petition and for abstention, and granting RGH's motion to transfer. See In re Reliance Group Holdings, Inc., 273 B.R. 374 (Bankr. E.D.Pa.). On February 27, 2002, the Liquidator filed a Notice to Appeal to the Eastern District of Pennsylvania District Court under 28 U.S.C. § 158(a)(1) (appeal as of right) with regard to certain issues for which immediate appellate relief was available, and 28 U.S.C. § 158(a)(3) (appeal by permission) for the remaining issues. See Cert. Exhibit H (Notice of

---

[4] A case removed under 28 U.S.C. § 1452 is first removed to the District Court. If the matter arises under, arises in, or relates to a Title 11 case, it is referred to the Bankruptcy Court under the July 25, 1984 Standing Order of the Eastern District of Pennsylvania, as amended by the Order of November 8, 1990.

[5] Section 1412 provides that a "district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

[6] Section 1452(b) provides, in relevant part, as follows: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

9

Appeal).  Immediately after the docketing of the Liquidator's appeal from the Eastern District of

Pennsylvania Bankruptcy Court's February 22, 2002 decision, the clerk of the bankruptcy court,

in deference to the District Court's appellate jurisdiction, ceased all efforts to transmit the

Emergency Petition file to the Southern District of New York.  See Cert. Exhibit I (Relevant

Docket Entries) (reflecting no transmission of file to the Southern District of New York).

Judge Weiner, United States District Judge for the Eastern District of Pennsylvania, to

whom the Emergency Petition bankruptcy appeal and other related bankruptcy appeals were

assigned, conducted a telephone status conference.  During the conference, Judge Weiner

suggested that the parties to the Emergency Petition, the Liquidator, RGH, and the official

creditor committees of the RGH bankruptcy estate ("RGH creditor committees"), explore

settlement and a narrowing of the issues for court resolution.  Thirty day consensual and

consecutive stays of the Emergency Petition were ordered by Judge Weiner to afford the parties

an opportunity to negotiate.  On August 30, 2002, Judge Weiner entered an order extending the

temporary stay of the Emergency Petition and providing the interested parties to the Emergency

Petition with a mechanism to terminate promptly the temporary stay, obtain a firm trial date for

the matter, or assistance from the Court in settling the matter.  See Cert. Exhibit J (Order of the

Eastern District of Pennsylvania (Aug. 30, 2002)).  Specifically and in addition to temporarily

staying the Emergency Petition, Judge Weiner ordered:

> This matter remains ACTIVE.  It is further understood that all discovery and
> settlement discussions will continue and if intervention by the Court is needed or
> desired, the parties may ask for assistance by either filing the appropriate motions,
> writing to the Court or by setting a telephone conference.  The parties shall keep
> the Court advised of the status of this case and may request a firm trial date or
> settlement conference by writing directly to the Court or by telephone conference.

114582.00601/21232709v5

<u>See</u> Cert. Exhibit I.

The parties to the Emergency Petition concluded their negotiations in March 2003 and entered into a settlement agreement resolving a substantial number of issues in the related bankruptcy appeals pending before Judge Weiner, as well as a host of other issues and disputes between Reliance and RGH. This settlement agreement, which was subject to the approval of both the RGH bankruptcy court and the Commonwealth Court of Pennsylvania, finally became effective in July, 2003. <u>See</u> Cert. Exhibit K (Settlement Agreement with Orders of Approval). The settlement agreement between Reliance and the RGH creditor committees addressed the status of the Emergency Petition, providing that the Liquidator and the RGH creditor committees would continue to negotiate a resolution of the merits of the Emergency Petition. <u>See</u> Cert. Exhibit J, § 4(e). In the fall of 2003, the Liquidator and the RGH creditor committees were discussing various issues relating to the Emergency Petition. These discussions were continuing when the Liquidator learned of this Court's November 19, 2003 opinion and Plaintiffs' efforts to have this Court decide issues of the ownership of the Policies and Proceeds, issues which are currently and actively pending before the Eastern District of Pennsylvania and subject to its exclusive jurisdiction.

III.    ARGUMENT.

    A.    The Eastern District of Pennsylvania Has Exclusive Jurisdiction Over the <u>Questions of Ownership of the Policies and Proceeds.</u>

Under well-established principals of federal law, this Court may not permissibly exercise jurisdiction over the Policies and the Proceeds. It is well-established that once a court, state or federal, assumes jurisdiction of an <u>in rem</u> or <u>quasi in rem</u> proceeding, as the Eastern District of

11

Pennsylvania has done here, that court exercises jurisdiction to the exclusion of any other court. Accordingly, this Court must defer to the in rem jurisdiction of the Eastern District of Pennsylvania.

In the seminal case of Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456 (1939), the United States Supreme Court held that when two suits are in rem or quasi in rem, so that the court must exercise control over the property which is the subject of the litigation, in order to proceed with the matter and grant the relief sought, the first court to assume jurisdiction over the property must maintain and exercise that jurisdiction to the exclusion of all other courts. 305 U.S. at 466; see Federal Deposit Ins. Corp. v. Four Star Holding Co., 178 F.3d 97, 102 (2d Cir. 1999); Insurance Corp. of Hannover, Inc. v. Latino Americana de Reaseguros, S.A., 868 F. Supp. 520, 531 (S.D.N.Y. 1994); see also Donovan v. City of Dallas, 377 U.S. 408, 412 (1964) ("Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. That rule has continued substantially unchanged to this time. An exception has been made in cases where a court has custody of property, that is, proceedings in rem or quasi in rem. In such cases this Court has said that the state or federal court having custody of such property has exclusive jurisdiction to proceed.") (citing Princess Lida) (emphasis added); Chesley v. Union Carbide Corp., 927 F.2d 60, 66 (2d Cir. 1991) (applying Princess Lida to affirm a dismissal of a later-filed federal suit); see also Levy v. Lewis, 635 F.2d 960, 965 (2d Cir. 1980) (citing Princess Lida for the proposition that once a court has jurisdiction over a particular res, no other court can proceed with respect to the same res). The principle in Princess Lida is applicable not only to cases where property has been actually seized, but "applies as well where suits are brought to marshal

12

assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property." Id.; see Lankenau v. Coggshell & Hicks, 350 F.2d 61, 64 (2d Cir. 1965).

           1.    This Court Has Determined that It Must Exercise In Rem Jurisdiction to Resolve the Motion to Enforce the MOU.

In this Court's November 19, 2003, Opinion and Order granting Plaintiffs' motion to join Underwriters, this Court determined that it is "essential" to decide "the question of ownership" of the Policies in resolving Plaintiffs' motion to enforce the MOU. See Opinion of the Court (November 19, 2003) at 5. The Policies and their Proceeds are property. See In re United States Lines, Inc., 197 F.3d 631, 637 (2d Cir. 1999). Proceedings to determine the rights of ownership in property, by definition, fall within a court's in rem jurisdiction. See Majique Fashions, Ltd. v. Warwick & Co., Ltd., 414 N.Y.S.2d 916, 920 (App. Div. 1979) (defining scope of in rem jurisdiction matters); see also Haymond v. Lundy, Civil Action No. 99-5048, 2002 WL 1964336 (E.D.Pa. Aug. 23, 2002) (stating that court exercising in rem jurisdiction determined the ownership of property). Accordingly, to decide "the question of ownership," this Court must exercise in rem jurisdiction over the Policies and the Proceeds. See Opinion of the Court (November 19, 2003) at 5. However, under the doctrine of Princess Lida and its progeny, as interpreted by the Second Circuit, this Court is forbidden from exercising in rem jurisdiction over the Policies and Proceeds until such time as the Emergency Petition is resolved and the Eastern District of Pennsylvania releases the Policies and Proceeds from its "first in time" exercise of in rem jurisdiction.

13

2.    The Policies and Proceeds Are Already Subject to the In Rem Jurisdiction
of the Eastern District of Pennsylvania.

a.    The Insurance Receivership Proceedings and the Emergency
Petition Are In Rem Matters.

The Emergency Petition was originally filed in the insurance receivership and insolvency

proceedings commenced by the Commissioner in the Commonwealth Court of Pennsylvania.

The statutory purposes of insurance receivership proceedings, like those involving Reliance,

under the Insurance Department Act, including both rehabilitation and liquidation, are to

conserve, marshal, and, if necessary, liquidate the assets of the insolvent insurer for the benefit

and protection of the insurer's policyholders, creditors, and the general public.  The U.S.

Supreme Court and courts in this Circuit have long recognized that the Princess Lida doctrine

applies to proceedings "to marshal assets . . . or liquidate estates, and to suits of a similar nature

where, to give effect to [a court's] jurisdiction, the court must control the property."  Lankenau,

350 F.2d at 64 (citing Princess Lida) (additional citations omitted).

The in rem nature of rehabilitation and liquidation proceedings under the Insurance

Department Act is reflected in the terms of the Orders of Rehabilitation and Liquidation issued

by the Commonwealth Court of Pennsylvania.  See Cert. Exhibits A, B.  In the Order of

Rehabilitation, entered May 29, 2001, the Commonwealth Court exercised the fullest measure of

its jurisdiction over all of the assets of Reliance, stating:

> [T]he Commissioner is hereby directed to take immediate possession of the assets
> . . . contracts and rights of action of Reliance, of whatever nature and wherever
> located, whether held directly or indirectly. . . .  All . . . persons having in their
> possession which are, or may be, assets of Reliance are hereby ordered . . . not to
> disburse, convey, transfer, pledge, assign, hypothecate, encumber, or in any
> manner dispose of such assets without the prior written consent of . . . the
> Rehabilitator. . . .  [A]ll persons are hereby enjoined and restrained from

14

114582.00601/21232709v5

interfering in any manner with the Rehabilitator's possession, title and rights to
the assets and property of Reliance . . . . Those persons . . . are hereby enjoined
and restrained from wasting, transferring, selling, concealing, terminating,
canceling, destroying, disbursing, disposing of, or assigning in any assets,
contracts, causes of action, funds, records or other property of any nature of
Reliance.

See Cert. Exhibit A, ¶¶ 3-6, 26.

In filing the Emergency Petition, the Liquidator specifically sought a determination from

the Commonwealth Court that the Policies and the Proceeds were assets of the Reliance estate.

See Cert. Exhibit C at 9.  Specifically, the Commissioner sought "the following relief: . . . [a]

declaration that the Policies and their proceeds are assets of Reliance and are covered by the

provisions of the May 29, 2001 Order of [the Commonwealth] Court . . . ."  Id.  Thus, the

Emergency Petition is doubly an in rem matter subject to the Princess Lida doctrine.  First, the

operative relief sought in the Emergency Petition is the determination of rights of ownership in

the Policies and Proceeds, an in rem proceeding by definition.  See Haymond, supra.  Second,

the Emergency Petition seeks a determination that the Policies and Proceeds fall within the

Commonwealth Court's exercise of its in rem jurisdiction in the May 29, 2001 Order of

Rehabilitation, and subsequent Order of Liquidation.  See Lankenau, 350 F.2d at 64.

> b.    Removal of the Emergency Petition Placed It Within the In Rem
>        Jurisdiction of the Eastern District of Pennsylvania, to the
>        Exclusion of All Other Courts.

On June 21, 2001, RGH removed the Emergency Petition to the Eastern District of

Pennsylvania and sought a transfer of the matter to the Southern District of New York

Bankruptcy court.  Removal did not change the nature or character of the Emergency Petition

from an in rem matter to one of in personam jurisdiction.  On the contrary, after removal, the

15

Emergency Petition remained and remains an in rem matter.  See, e.g., Sun Forest Corp. v. Shvili, 152 F. Supp. 2d 367, 387 (S.D.N.Y. 2001) (holding that after removal, district court takes removed action in posture in which it existed in state court at time of removal and must give effect to all actions and procedures accomplished in state court before removal).

While the February 22, 2002, order of the Eastern District of Pennsylvania Bankruptcy Court purported to transfer the Emergency Petition to the Southern District of New York, the intervening appeal of the Liquidator to the Eastern District of Pennsylvania District Court vested the District Court with in rem jurisdiction over the Emergency Petition.  Upon notice of the Liquidator's appeal on February 27, 2002, and in deference to the District Court's jurisdiction over the appeal, the Eastern District of Pennsylvania Bankruptcy Court refrained from physically transferring the clerk's official, Emergency Petition file to the Southern District of New York. Consequently, because, in transfer cases, jurisdiction over the case follows the receipt of the file and its docketing in the transferee district, see, e.g., Drabik v. Murphy, 246 F.2d 408, 409 (2d Cir. 1957) (jurisdiction vests in transferee court only upon entry of matter in transferee court's records), contrary to Plaintiffs' unfounded assertions, the Southern District of New York never obtained jurisdiction over the Emergency Petition.[7]  Therefore:

(1) because the removal of the Emergency Petition by RGH divested the Commonwealth Court of all jurisdiction over the Emergency Petition, see 28 U.S.C. § 1446; and

---

[7]  Even if the Emergency Petition file had eventually been sent to and docketed by the Southern District of New York, the prior appeal by the Liquidator would have prevented the Southern District of New York from obtaining jurisdiction over the Emergency Petition.  See Drabik, 246 F.2d at 409; Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co., 178 F.2d 866, 869 (2d Cir. 1950) (stating that once jurisdiction is properly obtained by an appellate court it is not terminated by the subsequent completion of a transfer); see also In re Brumlik, 132 B.R. 495, 497 (M.D. Ga. 1991) (same in bankruptcy appeal context).

16

(2) because the Liquidator's appeal from the February 22, 2002 order of the bankruptcy court denying remand and granting transfer of the Emergency Petition divested the Eastern District of Pennsylvania Bankruptcy Court of all jurisdiction over the Emergency Petition, see Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58-59 (1982); and

(3) because the transfer of the Emergency Petition was never completed (prior to the perfection of the Liquidator's appeal), thus preventing the Southern District of New York from obtaining jurisdiction over the Emergency Petition, Drabik, 246 F.2d at 409; and

(4) because the Emergency Petition is a matter falling squarely within a court's in rem jurisdiction, under the doctrine of Princess Lida, the District Court for the Eastern District of Pennsylvania, at this time, is the only court that has in rem jurisdiction over the Emergency Petition. Only the Eastern District of Pennsylvania may rightfully determine questions of ownership in the Policies and the Proceeds. The in rem jurisdiction of the Eastern District of Pennsylvania is to the exclusion of all other courts, including this Court. Indeed, courts in this district in similar circumstances have suggested that under Princess Lida, any decision by this Court with respect to the ownership of the Policies or Proceeds would be of no effect, because this Court lacks jurisdiction over that property. Insurance Corp. of Hannover, 868 F. Supp. at 531 (citing Donovan, 377 U.S. at 412; Princess Lida, 305 U.S. at 465-68).

The case of Insurance Corp. of Hannover illustrates the jurisdictional impediment at issue here. Id. In Insurance Corp. of Hannover, the District Court for the Southern District of New York previously obtained in rem jurisdiction over certain disputed property, specifically trust funds posted by a Panamanian reinsurance company as a condition of doing business in the State of New York. Id. at 523-24. A representative of the Panamanian reinsurer's receiver claimed an

17

114582.00601/21232709v5

ownership interest in the trust funds and appeared before the Insurance Corp. court with a decree

from a Panamanian court purporting to exercise jurisdiction over the trust funds. The Insurance

Corp. court refused to acknowledge the Panamanian decree stating:

> [T]his Court is the only tribunal that possesses jurisdiction over the Trust
> Property, and no decision issued by a Panamanian court can change that fact.
> While the courts of Panama might be able to order [the reinsurer] to pay [certain] .
> . . claims, they could not order these claims be paid from the Trust Property itself
> because they lack jurisdiction over those funds.

Id. at 531 (citations omitted, emphasis added).

In this case, the Eastern District of Pennsylvania has previously exercised jurisdiction (in

rem) over the Policies and the Proceeds, prior to this Court's determination on November 19,

2003, that Plaintiffs' motion to enforce the MOU required the resolution of certain ownership

issues involving the same property. However, like the Panamanian court in Insurance Corp., this

Court lacks jurisdiction over the Policies and Proceeds and must yield to the exclusive

jurisdiction of the Eastern District Pennsylvania over that property. While this Court may have

jurisdiction over Plaintiffs, Defendants, Underwriters and the claims in the Securities Class

Action, this Court "could not order that [Plaintiffs'] claims be paid from the [Proceeds] because

[this Court] lack[s] jurisdiction over those funds." Insurance Corp. of Hannover, 868 F. Supp. at

531; see Four Star Holding, 178 F.3d at 102 (stating that the principle that the court first

assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion

of the other, is not restricted to cases where property has been actually seized under judicial

process before a second suit is instituted, but applies as well in suits where, to give effect to its

jurisdiction, the court must control the property).

18

114582.00601/21232709v5

Although the <u>Princess Lida</u> doctrine deals with the exercise of <u>in rem</u> jurisdiction, rather than federal subject matter jurisdiction, the Second Circuit has held that "the <u>Princess Lida</u> rule is no less binding on federal courts." <u>Carvel v. The Thomas and Agnes Carvel Foundation</u>, 188 F.3d 83, 86 (2d Cir. 1999). As when a district court lacks subject matter jurisdiction, the inability of this Court to exercise <u>in rem</u> jurisdiction over the Policies and Proceeds requires that this Court "announc[e] the fact and dismiss[] the cause," here Plaintiffs' motion to enforce the MOU. <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 94 (1998).

The inability of this Court to exercise jurisdiction over the Policies and the Proceeds does not deprive Plaintiffs or Defendants of any remedy or procedural right. Plaintiffs and Defendants are free to seek relief in connection with the Emergency Petition from the Eastern District of Pennsylvania. Indeed, Defendants are parties to the Emergency Petition matter and clearly have standing to seek relief from the Eastern District of Pennsylvania from any provision of the Stipulation and Order. In addition, this Court, after acknowledging the exclusive jurisdiction of the Eastern District of Pennsylvania over the Policies and Proceeds, may stay Plaintiffs' motion to enforce the MOU and order Plaintiffs to petition Judge Weiner in the Eastern District of Pennsylvania for a prompt resolution of the Emergency Petition bankruptcy appeal. Alternatively, if Defendants are unwilling to voluntarily seek relief from Judge Weiner, this Court may direct Defendants to seek relief from the Stipulation which prevents them from otherwise seeking to settle the underlying merits of Securities Class Action, as well as directing Defendants to petition Judge Weiner for resolution of the Emergency Petition bankruptcy appeal.

19

In view of the exclusive jurisdiction of the Eastern District of Pennsylvania, and for these reasons stated above, this Court must dismiss or stay Plaintiffs' motion to enforce the MOU to the extent that it requires a determination of the ownership of the Policies or Proceeds.

> B.    Alternatively, Under the First-Filed Rule, This Court Should Defer to the First in Time Exercise of Jurisdiction Over the Policies and Proceeds by the Eastern District of Pennsylvania.

Even if this Court were to conclude that the exercise of in rem jurisdiction over the Policies and Proceeds by the Eastern District of Pennsylvania does not deprive this Court of jurisdiction to determine issues of ownership of the very same property, this Court should nevertheless refrain from exercising jurisdiction over these matters and should stay Plaintiffs' motion to enforce the MOU based on principals of sound judicial administration, conservation of judicial resources, the interests of justice, and the strong preference of the federal courts in permitting the first filed suit to have priority. See Semmes Motors Inc. v. Ford Motor Co., 429 F. 2d 1197, 1202-03 (2d Cir. 1970); Mattel, Inc. Louis Marx & Co., 353 F.2d 421, 423-24 (2d Cir. 1965).

> 1.    The First-Filed Rule.

"The federal courts long have recognized that the principle of comity requires federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs." Sutter Corp. v. P&P Indus., Inc., 125 F.3d 914, 917 (5th Cir. 1997) (citations omitted).  The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." Id. (citations omitted); see Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976); Landis v. North American

20

Co., 299 U.S. 248, 254-55 (1936). "Where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." Adam v. Jacob, 950 F.2d 89, 92 (2d Cir. 1991) (citations and internal quotations and alterations omitted); see Cessna Aircraft Co. v. Brown, 348 F.2d 689, 692 (10th Cir. 1965) (stating that the "rule is that the first federal district court which obtains jurisdiction of the parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated").

In Adam, the Second Circuit discussed the "first filed" rule, stating:

> Deference to the first filing embodies considerations of judicial administration and conservation of resources. The decision whether or not to stay or dismiss a proceeding rests within a district judge's discretion. . . . [H]owever, a district court can go beyond the allowable bounds of discretion when it refuses to stay or dismiss a duplicative suit. . . . [T]he propriety of the forum [is] a threshold issue that must be considered before addressing the merits.

Id. at 92 (quoting Semmes, 429 F.2d at 1204) (additional citations omitted). The Second Circuit has further stated that while the "balancing of convenience should be left to the discretion of the district court . . . discretion is not to be equated with judicial license to decide by fiat: Jurisdiction to litigate is not something to be granted or withheld by a court at its wish or convenience." Mattel, 353 F.2d at 423-24 (citations omitted).

The first-filed analysis requires consideration of the following non-exhaustive list of factors: (1) convenience of the witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with governing law; (8) the weight

21

accorded the original choice of forum; (9) trial efficiency and the interests of justice based on the totality of the circumstances. See Kellen Co. Inc. v. Calphalon Corp., 54 F. Supp. 2d 218, 221 (S.D.N.Y. 1999); see also Continental Time Corp. v. Swiss Credit Bank, 543 F. Supp. 408, 410 (S.D.N.Y. 1982) (citing Semmes Motors, 429 F.2d at 1202-03). In addition, in the context of insurance receivership proceedings, the Second Circuit has recognized that based on issues of federalism, the forum preference of an insurance receiver, like the Liquidator, is entitled to significant consideration by a district court in determining whether to avoid duplicative litigation. Levy v. Lewis, 635 F.2d at 966-67.

2.    Application of the First-Filed Rule Favors the Jurisdiction of the Eastern District of Pennsylvania.

Applying these factors with respect to the issues of ownership of the Policies and Proceeds, the balance of convenience for this dispute favors neither the Southern District of New York nor the Eastern District of Pennsylvania, thus countenancing adherence to the first-filed rule. The close geographic proximity of the two courts dispels all reasonable concern over the hardship which may be caused by permitting the resolution of the issues of ownership of the Policies and Proceeds in Philadelphia as opposed to New York City. The relevant witnesses, if any, to this dispute are or will be located in these two cities. The "locus of the operative facts" and persons with custody or control of documents, and the documents themselves, relevant to the ownership dispute will be located either in New York or Philadelphia, or as is more likely, both cities. There is no inconvenience to the parties, particularly since Plaintiffs' co-lead counsel, Ms. Savett, maintains her office in Philadelphia, as does counsel for Defendant Robert Steinberg. Both courts can compel the attendance of witnesses and there are no trial efficiencies separating

22

the two forums. Indeed, no similarity exists between the issues surrounding the Policies and Proceeds and the claims in this Securities Class Action so as to give this Court any advantage in deciding the ownership issues. On the issue of governing law, both courts are also equally equipped to determine the appropriate state law to be applied to the issues of ownership of the Policies and Proceeds. See Semmes, 429 F.2d at 1204 (stating that another federal court can determine applicable law "as well – or badly – as one in New York").

     In addition, no special circumstances exist to favor this Court over the Eastern District of Pennsylvania. In fact, the opposite is true – special circumstances favor the Eastern District of Pennsylvania, particularly in light of the Liquidator's preference to have these issues resolved in the Commonwealth Court of Pennsylvania in the event the Emergency Petition bankruptcy appeal results in a remand of the merits to the Commonwealth Court. Levy, 635 F.2d at 966-67. As the Second Circuit recognized in Levy, and in the event the Emergency Petition is remanded to the Commonwealth Court, insurance receiverships give rise to "exceptional circumstances" warranting the prevention of duplicative litigation in state and federal forums, thus enabling the Liquidator to marshal the assets of Reliance in a single forum, permitting the consolidation of all claims against the assets of the insolvent insurance company, avoiding the delay and disruption which would result from piecemeal litigation in other forums, and promoting the federal policy, embodied in the McCarran-Ferguson Act, of leaving regulation of insurance matters to the states. See id. at 967.

23

3.    Deferring to the Jurisdiction of the Eastern District of Pennsylvania Will
Prevent Plaintiffs' from Benefiting from Impermissible Forum Shopping.

The Second Circuit has repeatedly stated that one of the primary purposes of the first-

filed rule is to prevent litigants from benefiting from forum or even judge shopping. See e.g.,

Motion Picture Lab. Technicians Local 780 v. McGregor & Werner, Inc., 804 F.2d 16, 19 (2d

Cir. 1986) (stating that the "chief 'special circumstance' . . . noted [by the Second Circuit] is . . .

[the] interest in discouraging forum shopping") (citations omitted). In Semmes, a decision

reversing a district court's failure to apply the first-filed rule, the Second Circuit discussed the

dangers of forum shopping, stating: "When [litigants] see a storm brewing in the first court, they

may try to weigh anchor and set sail for the hopefully favorable waters of another district."

Semmes, 429 F.2d at 1203.  Troubled by the prospect that the haphazard application of the first-

filed rule may encourage forum shopping, the Semmes court stated that "the instances where the

second court should go forward . . . should be rare indeed. Id. at 1203-04 (reversing the district

court and holding that the district court "went beyond the allowable bounds of discretion when it

refused" to yield to the jurisdiction of the first court).

Plaintiffs' conduct in this case and their lack of action with respect to the Emergency

Petition suggests that they are intentionally attempting to avoid the jurisdiction of the Eastern

District of Pennsylvania.  Plaintiffs apparently view this Court as a more favorable forum for the

resolution of issues involving the Policies and Proceeds.  Indeed, Plaintiffs' motion to enforce

the MOU by its own terms is a collateral attack on matters pending in another federal court and a

bold attempt to enlist the aid of this Court in frustrating another federal court's exercise of in rem

jurisdiction over the Policies and Proceeds.

24

In their memorandum of law in support of the motion to enforce the MOU, Plaintiffs

contend that the Emergency Petition and the Stipulation have barred them from consummating a

settlement on the terms contained in the MOU. See Plaintiffs' Memorandum of Law in Support

of Motion to Enforce MOU (filed Sept. 23, 2003) (hereinafter "Pl. Original Brief") at 3-4.

However, curiously absent from Plaintiffs' self-serving contentions is any mention of the efforts

they have undertaken to obtain relief from the only court with jurisdiction over the Stipulation

and the Emergency Petition, i.e., the Eastern District of Pennsylvania. In Plaintiffs' original

memorandum of law, they contend:

> The parties have effectively been barred from consummating the Settlement set
> forth in the MOU and Funding Agreement as a result of the Rehabilitator's
> Emergency Petition, which resulted in an Order and accompanying letter issued
> by the Commonwealth Court in that action, expressing the Commonwealth
> Court's perception that the Policies are assets of RIC's estate, which cannot be
> used without the approval of the Commonwealth Court and RIC's Rehabilitator.
>
> . . .
>
> With no justifiable reason, the Commonwealth Court's Order and Letter have
> taken on such force that they have become the sole barrier to implementation of
> the MOU between the Defendants and Plaintiffs in the Securities Class Action.
> The Court should remove this substantial impediment to the settlement of this
> action by declaring that the Commonwealth Court Order and Cover Letter are of
> no legal consequence and may not be relied upon by Defendants and Underwriters
> to avoid their obligations under the MOU and the Funding Agreement.

See Pl. Original Brief at 3-4, 13.

Despite arguing vehemently that an Order issued in connection with the Emergency

Petition is the "sole barrier" to the enforcement of the MOU, Plaintiffs, for more than two years,

have done nothing to obtain relief from that Order from the Eastern District of Pennsylvania, the

only court before whom the Emergency Petition is pending and the only Court with the

25

114582.00601/21232709v5

jurisdiction to grant the relief they seek. Plaintiffs repeatedly and erroneously assert that the transfer of the Emergency Petition to the Southern District of New York was effective and complete. See Pl. Original Brief at 2-3. As explained above, the Southern District of New York never obtained jurisdiction over the Emergency Petition because the official file for the matter was never shipped, received or docketed in this District. See Drabik, supra. Because some court must have jurisdiction over a pending matter at all times, the only court with jurisdiction over the Emergency Petition is the Eastern District of Pennsylvania.

Plaintiffs have never sought to intervene in the Emergency Petition matter to protect or vindicate their alleged rights in the Policies or Proceeds. Nor have Defendants, who are parties to the Emergency Petition matter, sought relief from the Stipulation and Order in order to be free to proceed with a settlement of this case. Notwithstanding Plaintiffs' protests of being barred by the Emergency Petition, the Eastern District of Pennsylvania has expressly stated that it is and remains an open and available forum for the prompt resolution of all issues presented by the Emergency Petition. See Cert. Exhibit J. Specifically, in its August 30, 2002 Order, while staying the Emergency Petition bankruptcy appeal temporarily to permit the Liquidator and the RGH creditor committees to discuss settlement and to narrow the issues for resolution by the Court, the Eastern District of Pennsylvania specifically ordered:

> [The Emergency Petition] remains ACTIVE. It is further understood that all discovery and settlement discussions will continue and if intervention by the Court is needed or desired, the parties may ask for assistance by either filing the appropriate motions, writing to the Court or by setting a telephone conference. The parties shall keep the Court advised of the status of this case and may request a firm trial date or settlement conference by writing directly to the Court or by telephone conference.

See Cert. Exhibit J (emphasis added).

26

114582.00601/21232709v5

Thus, as the Liquidator has sought intervention in this matter to protect the interests of Reliance, its policyholders and the public, so too were Plaintiffs free to intervene in the Emergency Petition matter before the Eastern District of Pennsylvania to obtain relief from the Order and Stipulation which they now claim is the sole impediment to the settlement of this case. Instead of seeking this relief in the appropriate forum, Plaintiffs have sought out what they believe is a more favorable forum, based on this Court's expressed intention to advance expeditiously the resolution of the Securities Class Action. In an effort both to deflect and capitalize on this Court's frustration with Plaintiffs' failure to take any steps in more than two years to advance the Securities Class Action or settlement, Plaintiffs, accusing the Liquidator of barring enforcement of the MOU, have asked this Court to ignore its lack of in rem jurisdiction over the Policies and Proceeds, to ignore the operative orders of a co-equal district court in an active and pending matter,[8] and to ignore the policyholders and creditors of Reliance, as well as the interests of the creditors of the RGH bankruptcy estate, all of whom have asserted their legitimate ownership interests in both the Policies and the Proceeds. This Court should not permit itself to be hood-winked by Plaintiffs' misdirected arguments in their scheme to circumvent the jurisdiction of the Eastern District of Pennsylvania.

The Eastern District of Pennsylvania is an open and available forum to both Plaintiffs and Defendants to seek whatever relief they believe they need from orders issued in connection with the Emergency Petition. Plaintiffs or Defendants need only write to Judge Weiner or request a telephone conference with him to have their concerns heard. See Cert. Exhibit J. Foregoing

---

[8] By operation of the federal courts' removal jurisdiction, state court orders in effect at the time of removal remain in effect after removal, leaving the court to whom the matter was removed as the appropriate court to revisit or

27

these simple measures over the past two years, Plaintiffs would rather have this Court take the extraordinary steps of disregarding the jurisdiction of the Eastern District of Pennsylvania and invalidating orders issued in a matter pending before it.  This Court should not indulge Plaintiffs' outrageous requests.

As in <u>Semmes</u>, and considering the policies supporting the first-filed rule, in particular the Liquidator's strong preference to resolve issues involving the Policies and Proceeds in another forum, <u>see</u> <u>Levy</u>, <u>supra</u>, and Plaintiffs' attempt to benefit from impermissible forum shopping, this case presents "no considerations sufficient to justify an exception to the general [first-filed] rule . . . ."  <u>Semmes</u>, 429 F.2d at 1203.  Rather, the Liquidator submits that the appropriate course of action is for this Court to dismiss or stay Plaintiffs' motion to enforce the MOU, directing Plaintiffs (and Defendants, if they so choose) to seek from the Eastern District of Pennsylvania whatever relief from the Emergency Petition they believe they require.

IV.    <u>CONCLUSION</u>.

For the reasons set forth above, the Liquidator respectfully submits that this Court lacks jurisdiction over the Policies and Proceeds, thus requiring this Court to defer to the Eastern District of Pennsylvania with respect to questions surrounding the ownership of the Policies and Proceeds.  In addition, issues of comity, sound judicial administration, and the interests of justice dictate that this Court refrain from deciding all issues related to the ownership of the Policies and Proceeds, deferring to the Eastern District of Pennsylvania with respect to these issues.

---

reconsider such orders.  See <u>Sun Forest Corp.</u>, <u>supra</u>.

114582.00601/21232709v5

Accordingly, Plaintiffs' motion to enforce the MOU must be dismissed or stayed pending the resolution of the Emergency Petition by the Eastern District of Pennsylvania.

**BLANK ROME LLP**

By: _____

     Daniel J. Brown (DB 7458)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5000
Facsimile: (212) 885-5001

  -and-

Jerome R. Richter, Esquire
Ann B. Laupheimer, Esquire
Anthony Vidovich, Esquire
One Logan Square
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5694

Attorneys for Intervenor, M. Diane Koken,
Insurance Commissioner of the Commonwealth of
Pennsylvania, in her official capacity as Statutory
Liquidator of Reliance Insurance Company

Dated: January 16, 2004

29

114582.00601/21232709v5