# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |  |
|---|---|---|---|
| _____ | : |  |  |
|  | : | Misc. No. | 02-65, 02-77 |
| In the Matter of: | : |  |  |
|  | : | Civil Action Nos. | 02-3277 |
|  | : |  | 02-1643 |
| RELIANCE GROUP HOLDINGS, INC. | : |  | 02-1733 |
|  | : |  | 02-1774 |
|  | : |  |  |
| _____ | : |  |  |

## <u>ORDER</u>

AND NOW, this ____ day of May, 2004, upon consideration of the record on appeal and

the arguments set forth in the Brief Of Appellant M. Diane Koken, Insurance Commissioner Of

The Commonwealth Of Pennsylvania, In Her Official Capacity As Liquidator Of Reliance

Insurance Company, In Support Of Her Appeal With Respect To The Emergency Petition and

the Liquidator's Motion to Effectuate Settlement Agreement ("Motion"), and any responses

thereto, it is hereby ORDERED:

    (1)    the Motion is GRATNED;

    (2)    the above-captioned matters are restored and reinstated to the Court's
active docket;

    (3)    Adversary Proceeding 01-558 is dismissed with prejudice;

    (4)    with respect to the Adversary Proceeding 01-559 (the "Emergency
Petition"), the February 22, 2002 Opinion and Order of the Bankruptcy
Court are VACATED, and  the Emergency Petition is REMANDED to the
Commonwealth Court of Pennsylvania pursuant to 28 U.S.C. § 1334 and
§1452 for disposition on the merits.

_____
Honorable Charles R. Weiner, U.S.D.J.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| | : | | |
| | : | Misc. No. | 02-65, 02-77 |
| In the Matter of: | : | | |
| | : | Civil Action Nos. | 02-3277 |
| | : | | 02-1643 |
| RELIANCE GROUP HOLDINGS, INC. | : | | 02-1733 |
| | : | | 02-1774 |
| | : | | |
| | : | | |

### BRIEF OF APPELLANT M. DIANE KOKEN, INSURANCE COMMISSIONER OF THE COMMONWEALTH OF PENNSYLVANIA, IN HER OFFICIAL CAPACITY AS LIQUIDATOR OF RELIANCE INSURANCE COMPANY, IN SUPPORT OF HER APPEAL WITH RESPECT TO <u>THE EMERGENCY PETITION (ADVERSARY PROCEEDING 01-559)</u>

Jerome R. Richter
Ann B. Laupheimer
Anthony Vidovich
BLANK ROME LLP
One Logan Square
Philadelphia, PA  19103
(215) 569-5500 (Telephone)
(215) 569-5694 (Fax)

Attorneys for Appellant
M. DIANE KOKEN, Insurance Commissioner
of Pennsylvania, in her official capacity as
Liquidator of Reliance Insurance Company

114582.01600/11313184v4

Pursuant to the Court's request on April 29, 2004, Appellant M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania (the "Commissioner"), in her capacity as Liquidator (the "Liquidator") of Reliance Insurance Company ("Reliance"), by her undersigned counsel, hereby submits this Brief, pursuant to Federal Rules of Bankruptcy Procedure 8009 and 8010.

## STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The denial of the motion for remand and for abstention in this case is either a final order for appeal purposes, or an appealable collateral order. See In re Holtzclaw, 131 B.R. 162, 163 (E.D. Cal. 1991); Gentry v. Gentry, 207 B.R. 146, 149 (E.D. Ky. 1997); In re Unanue-Casal, 164 B.R. 216, (D. P. R. 1993); In re Midgard Corp., 204 B.R. 764, 769 (10th Cir. BAP 1997); In re RBGSC Investment Corp., 253 B.R. 369, 376 (E.D. Pa. 2000). With regard to appeals concerning bankruptcy matters in general, the Third Circuit has adopted a flexible and pragmatic approach to appealability. E.g., Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34, 36-37 (3rd Cir. 1993).

## STATEMENT OF ISSUES PRESENTED

In a matter filed by the Insurance Commissioner of Pennsylvania, in her capacity as Liquidator of an insolvent insurance company, within the state court insolvency proceedings of the insurer, seeking a determination that certain insurance policies and their proceeds were assets of the insurer's estate, the following issues are presented on this appeal:

1.      Whether, after this matter was improperly removed under 28 U.S.C. § 1452(a), the Bankruptcy Court below erred in refusing to remand it to the state court, even though it involved a "civil action by a governmental unit to enforce [its] police or regulatory power," a matter that is expressly non-removable under § 1452(a).

1

That decision is reviewed *de novo*.  In re Trans World Airlines, Inc., 145 F.3d 124, 131 (3rd Cir. 1998).

2.     Whether the Bankruptcy Court below erred in refusing to abstain from this matter under the mandatory abstention requirement of 28 U.S.C. § 1334(c)(2), where each of the requirements for mandatory abstention are satisfied in this proceeding.

That decision is reviewed *de novo*.  Trans World Airlines, Inc., 145 F.3d at 131.

3.     Whether the Bankruptcy Court below erred in finding that the non-party debtor had standing to remove this matter, and whether this matter, which was commenced by petition within the existing insolvency proceedings of an insurance company, was an independent matter that could be removed.

That decision is reviewed *de novo*.  Trans World Airlines, Inc., 145 F.3d at 131.

4.     Whether the Bankruptcy Court below erred in transferring this matter to the United States Bankruptcy Court for the Southern District of New York under 28 U.S.C. § 1412, pursuant to which only "core" bankruptcy proceedings may be transferred.

That decision is reviewed *de novo*.  Trans World Airlines, Inc., 145 F.3d at 131.

5.     Whether the Bankruptcy Court below erred in refusing to remand this proceeding to the Commonwealth Court under 28 U.S.C. § 1452(b) "on any equitable ground," where sufficient grounds exist to justify remand of this proceeding, including the recent Settlement Agreement between the parties to this suit, agreeing to litigate this case in the Commonwealth Court.

That decision is reviewed for abuse of discretion.  In re Greene, 1999 WL 689711 (E.D. Pa. 1999).

6.      Whether the Bankruptcy Court below erred in refusing to abstain from this proceeding under the discretionary abstention provision of 28 U.S.C. § 1334(c)(1), where sufficient grounds exist to justify discretionary abstention from this proceeding.

That decision is reviewed for abuse of discretion.  In re Greene, Nos. 98-35663, 98-831, CIV A 99-1840;1999 WL 689711 (E.D. Pa., Sept. 7, 1999).

7.      Whether the Bankruptcy Court below erred in refusing to abstain from this proceeding pursuant to common law abstention doctrines, including the Burford abstention doctrine, because sufficient factors exist to justify federal court abstention in this proceeding.

That decision is reviewed for abuse of discretion.  In re Greene, 1999 WL 689711 (E.D. Pa. 1999).

## STATEMENT OF THE CASE

A.    **Introduction**

In fulfillment of her statutory and court-ordered duties, the Liquidator commenced this matter (the "Emergency Petition") within the Reliance insolvency proceeding to protect certain assets of the Reliance estate, Reliance's liability insurance policies and the proceeds.  The Emergency Petition became necessary when certain former officers and directors of Reliance and its parent company, Reliance Group Holdings, Inc. ("RGH"), attempted to take for their sole benefit more than $17 million of Reliance insurance policy proceeds to fund the settlement of a class action lawsuit against them.  The Emergency Petition sought, among other things, a determination that the proceeds of the insurance policies were assets of the Reliance estate and subject to the control of the Commonwealth Court.

Subsequent to the Commissioner's takeover of Reliance, RGH, and its subsidiary, Reliance Financial Services Corporation ("RFS"), commenced Chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York.  Shortly thereafter, RGH

3

removed this matter to the Bankruptcy Court for this judicial district, invoking 28 U.S.C. § 1452, the statute governing bankruptcy removals. Simultaneously, RGH filed a motion to transfer this matter to the Bankruptcy Court in the Southern District of New York.

Recognizing that the removal of this matter to the Bankruptcy Court could severely interfere with the orderly management of the Reliance insolvency proceedings, the Liquidator immediately moved to remand the matter to the Commonwealth Court.

The Liquidator raised the following arguments before the bankruptcy court in support of remanding this matter to the Commonwealth Court: (1) the Emergency Petition is an action by a governmental unit exercising its police or regulatory power, which is expressly non-removable under section 1452(a); (2) the Emergency Petition is not an independently removable matter under section 1452(a), and since RGH is not a party to the Emergency Petition, RGH lacks standing to remove it; (3) the Bankruptcy Court is required to abstain from this matter, under 28 U.S.C. § 1334(c)(2), or alternatively, the bankruptcy court should exercise its discretion to abstain from this matter pursuant to 28 U.S.C. § 1334(c)(1); (4) the bankruptcy court should remand this action on equitable grounds, pursuant to 28 U.S.C. § 1452(b); (5) the bankruptcy court should abstain from this matter based upon common law abstention doctrines, including the Burford extension, originating in Burford v. Sun Oil Co., 319 U.S. 315 (1945), as removal of this matter to the Bankruptcy Court is inconsistent with the provisions of the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 - 1015, under which the regulation of insurance companies is a matter reserved exclusively for the states.

By Order and Opinion dated February 22, 2002, the Bankruptcy Court refused to abstain from this proceeding, denied the Liquidator's motions to remand, and granted RGH's motion to transfer. The Liquidator shortly thereafter filed a timely Notice of Appeal on February 27, 2002, seeking review by this Court of the bankruptcy court's rulings in this matter.

4

B.    **Factual And Procedural Background**

The Liquidator hereby incorporates by reference the factual and procedural background of this matter as set forth in the Status Report of the Liquidator of Reliance Insurance Company, filed with this Court January 30, 2004.[1]

## SUMMARY OF ARGUMENT

The Bankruptcy Court erred in finding that the Insurance Commissioner of Pennsylvania was not a "governmental unit," and that she was not "exercising police or regulatory power" in the Reliance liquidation proceedings. Under the plain language of section 1452, as well as virtually every relevant authority, the Commissioner, acting as liquidator of an insolvent insurance company, is a governmental unit exercising police or regulatory power. As such, her actions are expressly non-removable under section 1452.

The Bankruptcy Court erred in finding that the Emergency Petition is a "core" bankruptcy proceeding, which thus caused to the bankruptcy Court to refuse to abstain from this matter under 28 U.S.C. § 1334(c)(2). Had the Bankruptcy Court found this matter to be non-core, all of the factors for mandatory abstention would have been present, and remand would have been required. The Bankruptcy Court's holding that this was a core proceeding was plainly incorrect. Indeed, since this is a pre-petition matter, filed within a state court insurance insolvency action, seeking a determination of that court's jurisdiction, this is not a core

---

[1]    Since submitting the Status Report to the Court, Judge Griesa in the Securities Class Action filed an opinion and order of April 30, 2004, denying the Liquidator's motion to dismiss or stay the Securities Plaintiffs' motion to enforce the Memorandum of Understanding. While Judge Griesa's recent decision may implicate issues relating to the merits of the Emergency Petition, the decision does not in any way resolve the jurisdictional and procedural issues presented by this appeal or the Liquidator's March 1 Motion to Effectuate Settlement Agreement. For example, Judge Griesa's decision in no way resolves the issue of whether the Commissioner is a governmental unit within the meaning of 28 U.S.C. § 1452, or the issue of whether the Emergency Petition is a core or non-core matter under 28 U.S.C. § 1334. The statements to the contrary made in Mr. Kerr's letter to the Court of May 5, 2004, are simply incorrect.

bankruptcy proceeding. Courts confronted with such matters routinely find them to be non-core, as they properly recognize the limitations on bankruptcy court jurisdiction.

The Bankruptcy Court erred in ordering this matter be transferred to the Southern District New York under 28 U.S.C. § 1412. Under the plain meaning of that statute, as well as cases interpreting it, only core bankruptcy matters may be transferred. Because this matter is not a core proceeding, it should not have been transferred under section 1412.

The Bankruptcy Court erred by not remanding this matter under § 1452 (authorizing remand on any equitable ground), section 1334(c)(1) (authorizing discretionary abstention), or common law abstention doctrines, including <u>Burford v. Sun Oil Co.,</u> 319 U.S. 315 (1945). The Emergency Petition was a textbook example of a matter that should be heard in state court. It is a petition brought within the state court insolvency proceedings of an insurance company, and is thus inextricably intertwined with the regulation of insurance in Pennsylvania. The resolution of the Emergency Petition requires the interpretation of an order issued by the state court, involving a pure question of state law. These are matters reserved for exclusive state control under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 - 1015.

## <u>ARGUMENT</u>[2]

### I.     The Bankruptcy Court Erred In Failing To Remand this Action To The Commonwealth Court Because The Commissioner Is A Governmental Unit Enforcing Police or Regulatory Power

RGH removed this matter from the Commonwealth Court of Pennsylvania to the Eastern District of Pennsylvania pursuant to the bankruptcy removal provision of 28 U.S.C. § 1452(a). Section 1452(a) permits the removal of matters over which a district court has jurisdiction under 28 U.S.C. § 1334 (the statute governing bankruptcy jurisdiction). However, civil actions "by a

---

[2]   The Liquidator specifically incorporates herein by reference the arguments made in support of her March 1 Motion to Effectuate Settlement Agreement, specifically including her arguments regarding the D&O Defendants' lack of standing to oppose this appeal or the Liquidator's March 1 Motion.

governmental unit to enforce such governmental unit's police or regulatory power," such as this matter, are expressly non-removable under the section.  28 U.S.C. § 1452(a).  This exception to removal "reflects a Congressional deference to states and a policy not to permit the bankruptcy laws to interfere too greatly with state regulatory or police power proceedings."  In re Union Golf of Florida, Inc., 242 B.R. 51, 58 (Bankr. M.D. Fla. 1998); see In re First Alliance Mort. Co., 264 B.R. 634, 645 (C.D. Cal. 2001).

### A.    The Terms "Governmental Unit" And "Police Or Regulatory Power" Must Be Construed Broadly And In Favor Of Remand

Because removal statutes are an infringement on the power of states, they must be *strictly construed in favor of state court jurisdiction*.  Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3rd Cir. 1987); Shepard v. City of Philadelphia, 2001 WL 92300, *1 (E.D. Pa. 2001).  Any doubts concerning the removal procedure should be resolved in favor of remand. Steel Valley, 809 F.2d at 1010; Helman-Jones v. Anheuser-Busch, 2001 WL 179863, *1 (E.D. Pa. 2001); Shepard, 2001 WL 92300 at *1.  The burden of establishing removal jurisdiction is borne by the defendant, and failure to meet this burden results in remand of the removed case. Kimmet v. Mannesmann Dematic Rapistan Systems Corp., 2000 WL 822513, *2 (E.D. Pa. 2000).

The Bankruptcy Court's decision that the Liquidator was not a governmental unit enforcing police or regulatory power was contrary to both the plain language of section 1452(a) and the relevant case law.  The Bankruptcy Court also failed to take into account the entire scheme for the regulation of insurance in Pennsylvania, of which the Commissioner's duties as Liquidator and the control over insurance holding companies, are integral components.

While 28 U.S.C. § 1452 must itself be construed narrowly, its restrictions on removal must be interpreted broadly.  Thus, the terms "governmental unit" and "police or regulatory power," which are limitations on removal jurisdiction, must be interpreted generously in favor of

7

remand.  See Steel Valley, 809 F.2d at 1010.  Such an approach is designed to avoid unnecessary and inappropriate federal preemption of state governmental and regulatory functions.  See Penn Terra Ltd. v. Department of Env. Resources, 733 F.2d 267, 273 (3rd Cir. 1984) (interpreting same terms in exception to automatic stay provision of 28 U.S.C. § 362); see also In re James, 940 F.2d 46 (3d Cir. 1991) (instructing lower courts to apply the plain meaning of the police or regulatory exception).

### B.    Actions By Statutorily Appointed Receivers To Protect Assets Are Actions By Governmental Units Enforcing Police Or Regulatory Power

Virtually all of the reported case law under 28 U.S.C. § 1452 supports the conclusion that the Liquidator is acting as a governmental unit enforcing police or regulatory power.  See In re Pacific Gas & Electric Co., Bankruptcy No. 01-30923DM, Adversary Nos. 02-3026DM, 02-3040DM, 02-3042DM; 2002 WL 1453681 at *7 (Bankr. N.D. Cal, June 14, 2002) (proceeding by California Attorney General to enforce unfair competition laws not removable under § 1452(a)); In re Rabzak, 79 B.R. 966 (Bankr. E.D. Pa. 1987) (proceeding by a municipality to enforce its dumping laws not removable under § 1452(a)); In re Forster, 146 B.R. 383 (Bankr. N.D. Ohio 1992) (actions by state and county officials seeking costs resulting from the debtor's violation of environmental laws not removable under § 1452(a)); In re Friedman & Shapiro, 185 B.R. 143. (S.D.N.Y. 1995) (attorney disbarment action not removable under § 1452(a)).  In each of these cases, the court applied the *plain meaning* of § 1452, and found that the plaintiff was a governmental unit exercising police or regulatory authority.

An examination of section 362(b)(4) of the Bankruptcy Code, which contains an identical restriction on the jurisdiction of bankruptcy courts, is also helpful to this analysis.  Section 362(b)(4) exempts from the automatic stay actions "by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power . . . ."  11 U.S.C. § 362(b)(4).  Such actions are similarly carved out of the Bankruptcy Court's removal jurisdiction under § 1452(a).

Several courts interpreting § 362(b)(4) have held that a statutorily-appointed receiver for an institution acts as a governmental unit enforcing police or regulatory power when it brings a legal action to marshal the assets of that institution.  See Herman v. Brown, 160 B.R. 780 (E.D. La. 1993) (lawsuit by Insurance Commissioner as liquidator of failed insurance company); In re Piperi, 133 B.R. 846 (S.D. Tex. 1990) (lawsuit by liquidator of failed bank); In re Interchemicals Co., 148 B.R. 263 (Bankr. S.D. Tex. 1992) (same); see also In re Fitch, 123 B.R. 61, 63 (Bankr. D. Idaho 1991) (license revocation action by Insurance Department against debtor exempted from automatic stay).

In Herman v. Brown, for example, the Court found that a lawsuit filed by the liquidator of an insurance company against a debtor was exempt from the automatic stay provisions of the Bankruptcy Code.   Notably, the court found that there "*is no way to separate the actions of the Commissioner as Liquidator with the actions of the Commissioner as Commissioner. . . .*" Id. at 783 (emphasis added).

Similarly, in In re Piperi, the Court found that a lawsuit against the debtor by the liquidator of a bank, appointed under state law, was not subject to the automatic stay.  The court followed the same reasoning as the court in Herman, and found that the suit was an "action by a governmental unit wherein the receiver is enforcing *the state's regulatory power to collect and distribute the assets of the failed institution*."  In re Piperi, 133 B.R. at 849 (emphasis added). Likewise, in In re Interchemicals, the court found that a lawsuit by the New York Superintendent of Banking, as liquidator of a failed bank, sought "*to enforce its regulatory scheme* to provide a claims mechanism for litigants so as to liquidate and distribute the assets in its custody for the benefit of all claimants."  148 B.R. at 268.  As in Herman, the In re Interchemicals court found no reason to distinguish "between the Superintendent's bank licensing, bank liquidating activities, or claims resolution activities as police power functions."  Id. (emphasis added).

9

A recent case from the Western District of Pennsylvania also proves instructive.  In In re Bankruptcy Appeal of Allegheny Health, Education and Research Foundation, 252 B.R. 309 (W.D. Pa. 1999) ("AHERF"), the court applied the section 362 exception in a lawsuit brought by the Pennsylvania Attorney General to protect the assets and charitable mission of several non-profit entities.  Id. at 327.  The action was commenced in the Allegheny County Orphan's Court, which the district court found to be a "specialized court which traditionally operates to protect the public's interests in charitable foundations and trusts . . .[and is] charged with the responsibility and with the expertise to resolve the unsettled questions of state property and nonprofit corporation/charity law."  Id. at 330-31 (emphasis added).  The AHERF court reversed the bankruptcy court's decision, holding that the Attorney General's action was exempt from the automatic stay under § 362.  In so doing, the court explained that: "federal courts must give the Attorney General some deference in this regard as it presumptively acts in the public interest, and is, indeed, the only party that can really represent the 'beneficiaries' of the charitable missions of these entities, that is, the public."  Id. at 331 (emphasis added).

Rather than follow the roadmap established by these cases, the Bankruptcy Court instead formulated its own analysis which resulted in a ruling that the Insurance Commissioner of Pennsylvania was not a "governmental unit" for the purposes of § 1452.  The Court reached this result not through any discussion of section 1452(a) or section 362, or cases interpreting those provisions, but instead through a strained reading of "real party in interest" authority.  The bankruptcy Court's holding directly conflicts with the Third Circuit's command that "no unnatural efforts be made" to limit the scope of the exceptions in sections 1452(a) and 362. Penn Terra, 733 F.2d at 273 (emphasis added); See also James, 940 F.2d at 51.

In essence, the bankruptcy Court held that the Commissioner was not a governmental unit because the Commonwealth of Pennsylvania was not the real party in interest to the Emergency

Petition. In formulating its opinion however, the Bankruptcy Court did not address any cases interpreting the exception found in sections 1452(a). Rather, the Bankruptcy Court relied upon cases involving issues of *diversity of citizenship*, which involve interpretation of an entirely different statutory scheme. Under an analysis of the correct statutory scheme, the Bankruptcy Court should have found, as have other courts addressing this issue, that the Commissioner *is indeed a governmental unit enforcing its police and/or regulatory powers*. Consequently, the bankruptcy Court should have found section 1452(a)'s exception applicable to this case and declined jurisdiction accordingly. [3]

### C.    The "Pecuniary Interest" Test Is Inapplicable, And Is Satisfied In Any Event

The Bankruptcy Court also mistakenly based its decision on the so-called "pecuniary interest" test used by some courts in analyzing the police or regulatory exception under section 362.[4] The Court held this test applicable by relying on a footnote of dicta from a Third Circuit decision involving a contractual dispute between the Department of Health and Human Services and a Medicare provider where it was conceded that the police or regulatory exception did not apply. In so doing, the Bankruptcy Court completely disregarded the Third Circuit's decision in James, where the court held that the section 1452(a) exception is *not limited to any particular kind of government action*. Rather, pursuant to James, the "plain language" of the statute mandates that it applies to *every* "action or proceeding by a governmental unit to enforce such

---

[3] Likewise flawed was the reasoning behind the Bankruptcy Court's conclusion that the Commissioner was not exercising police or regulatory power in bringing the Emergency Petition. The Bankruptcy Court badly misstated the relief sought in the Emergency Petition, and its misunderstanding may have affected its ultimate decision and refusal to remand the matter. The Court stated that the Emergency Petition "seeks to take assets already within the control of the bankruptcy court and enable the Commissioner, and ultimately the policyholders and creditors of [Reliance], to gain a pecuniary advantage over the other creditors of [RGH's] estate." (DR 13, p. 13). In fact, the Emergency Petition sought only a determination that the insurance proceeds (which were not under the control of the New York Bankruptcy Court) were subject to the jurisdiction of the Commonwealth Court. Nowhere in the Emergency Petition does the Liquidator request that Reliance or its policyholders and creditors be given any preference in any distribution of those proceeds.

[4] Under the pecuniary interest test, the court determines whether the government's action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare.

11

governmental unit's police or regulatory power." <u>James</u>, 940 F.2d at 51.  In making this

determination, the <u>James</u> court did not employ the pecuniary interest test.

While some courts have used the pecuniary interest test in analyzing governmental

actions under section 362, there do not appear to be any reported decisions in which a court

(other than the Bankruptcy Court) has applied this test in analyzing a removal under § 1452.  In

fact, the bankruptcy court in <u>In re Pacific Gas & Electric Co.</u>, expressly held this test

*inapplicable* to a section 1452(a) analysis.  2002 WL 1453681 at *7.[5]

Furthermore, the pecuniary interest test has not even been expressly adopted in this

Circuit in the context of section 362, as is evidenced by the <u>James</u> decision.  The pecuniary

interest test is generally used by courts to narrow the scope of the "police or regulatory power"

exception with respect to section 362.  In this Circuit however, the exception is interpreted

broadly, and use of the test therefore, would be inconsistent with the Third Circuit's decisions in

<u>James</u> and <u>Penn Terra</u>.

However, even were this Court were to find the pecuniary interest test applicable, it

nevertheless is satisfied in the instant action.  Under the pecuniary interest test:

> courts have distinguished actions of governmental agencies brought solely to
> protect the agency's pecuniary interest from those intended to carry out the
> agency's regulatory or police power. Where the agency's sole concern in a given
> proceeding is to protect the government's pecuniary interests, the action remains
> subject to an automatic stay under Section 362(a). On the other hand, where the
> agency is acting to enforce its police or regulatory powers, the debtor-defendant is
> not entitled to an automatic stay of the proceedings against him.

<u>Metzler v. Bennett</u>, No. 97-CV-0148 (RSP/GJD);1998 WL 187454 at *4 (N.D.N.Y. 1998)

(citations omitted). Thus, under the pecuniary interest test, if the governmental unit brings suit

for reasons beyond mere pecuniary gain *for its own account*, then it is acting within the scope of

---

[5] The Court went on to note that even in the context of a section 362 analysis, the pecuniary interest test "may have lost some of its relevance," in light of the 1998 amendments to that provision of the Bankruptcy Code.  <u>Id.</u> at n.17.

the exception and should be given the benefit accordingly.  Thus, when the governmental entity

is acting to recover for the pecuniary benefits of *others*, the governmental unit is acting in accord

with its police and regulatory powers, and thus, should be entitled to receive the benefit of the

exception.  See Metzler v. Bennett, 1998 WL 187454 (N.D.N.Y. 1998).

In Metzler, the Court found that an action by the Secretary of Labor under ERISA against

a debtor was excepted from the automatic stay, reasoning that any monetary recovery would

ultimately go to the beneficiaries of the subject employee benefit plan.  In such circumstance, the

court reasoned that governmental unit was acting in furtherance of public policy and thus was

entitled to the benefit of section 362's exception to the automatic stay.  Indeed, the court

explained:

> Although the Secretary seeks to adjudicate the rights of the Plan's beneficiaries,
> any monetary amounts recovered will benefit those beneficiaries, not the
> government. *More important, suits such as this one were clearly intended to
> further an important public policy* . They were intended to secure more than just
> private rights. This is reflected in the statutory language of ERISA, where
> Congress stated that employee benefit plans are 'affected with a national public
> interest.' 29 U.S.C. § 1001. In other words, actions brought by the Secretary to
> enforce the provisions of ERISA are actions to effectuate public policy, and
> incidental benefits from the enforcement of the Act should not convert such
> enforcement from one of public policy to one characterized as an adjudication of
> individual rights.

Id. at *4 (emphasis in original).  See also Dole v. Hansbrough, 113 B.R. 96, 98 (D.D.C. 1990).

As in Metzler, the Commissioner here is not acting for the government's pecuniary

interest, but rather on behalf of the policyholders, creditors, and others who have been adversely

affected by the Reliance insolvency.  Further, just as in Metzler, the Commissioner here is acting

in furtherance of an important public policy - that of the equitable winding up and dissolution of

an insolvent Pennsylvania insurer. See Foster v. Peat Marwick Main & Co., 587 A.2d 382, 385

(Pa. Commw. 1991).[6]  Accordingly, the Commissioner is acting within her police and/or

regulatory capacity and should therefore be granted the benefit of the exception in 1452(a).

## II.    The Bankruptcy Court Erred In Holding That Abstention From This Case Is Not Required Pursuant to 28 U.S.C. § 1334(c)(2)

The Bankruptcy Court erred in holding that the requirements for mandatory abstention in

28 U.S.C. § 1334(c)(2) were not met.  Section 1334(c)(2) *requires* a federal court to abstain from

exercising jurisdiction over a matter when the following six factors are present:  (1) a timely

motion is made; (2) the proceeding is based upon a state law claim or state law cause of action;

(3) the proceeding is related to a case under title 11; (4) the proceeding does not arise under title

11, i.e., it is not a "core" proceeding; (5) the action could not have been commenced in a federal

court absent jurisdiction under 28 U.S.C. § 1334; and (6) an action is commenced, and can be

timely adjudicated, in a state forum of appropriate jurisdiction.  In re Grace Community, Inc.,

262 B.R. 625, 630 (Bankr. E.D. Pa. 2001).

The parties to this case agreed that at least four of the six elements for mandatory

abstention under 28 U.S.C. § 1334(c)(2) are met.  RGH has not argued that Reliance's motion for

remand and abstention was untimely.  Likewise, RGH admits that the merits of the Emergency

Petition – whether the policy proceeds were assets of the Reliance estate – is a matter that must

be decided exclusively under state law.  Finally, RGH conceded that this case could not have

been brought in federal court absent bankruptcy jurisdiction under 28 U.S.C. § 1334.[7]

---

[6] James, in which the Third Circuit held that a civil forfeiture action was exempt from the automatic stay, puts to rest any argument that the pecuniary interest test can be applied in this Circuit.   If any action would fail the pecuniary interest test, it would be a civil forfeiture action where the proceeds go to the government.

[7] While in a footnote in its Opinion the bankruptcy Court questioned whether diversity jurisdiction might have existed here absent bankruptcy jurisdiction, such is not possible because the Emergency Petition is not an independent action, but rather, a motion within the context of a larger proceeding.

A.    **This Matter Is A Non-Core Proceeding**

This issue of whether this proceeding is core or non-core is a question of law subject to *de novo* review by this Court.  See In re Trans World Airlines, Inc., 145 F.3d 124.  To be a core proceeding, the Third Circuit has held that a claim must either:  (1) invoke a substantive right provided by Title 11 (the Bankruptcy Code); or (2) be a proceeding that by its nature could arise only in the context of a bankruptcy case.  Halper v. Halper, 164 F.3d 830, 836 (3rd Cir. 1999). This matter does neither.

Under a plain reading of the Halper test, this matter is not a core proceeding.  It is a petition filed in state court to determine whether certain insurance policies and their proceeds are assets of the estate of an insolvent insurance company, a matter involving issues exclusively of state law.  This action was commenced prior to the RGH bankruptcy filing, invokes no substantive rights under Title 11, and does not depend upon Title 11 for its existence.[8]

Under relevant authority addressing the issue, a matter is non-core when three conditions are met:  (1) the matter arose pre-petition; (2) the matter requires the application of state law; and (3) the plaintiff has not filed a proof of claim on the issue.  Such a matter is not transformed into a core proceeding simply because it is removed to bankruptcy court.  See In re Asousa Partnership, 264 B.R. 376, 387 (Bankr. E.D. Pa. 2001); Bevilacqua v. Bevilacqua, 208 B.R. 11, 16-17 (E.D.N.Y. 1997); In re McCarthy, Gyemant & Babbits, Inc., 1996 WL 241703 at *3 & n.6 (N.D. Cal. 1996); In re Best Reception Systems, Inc., 220 B.R. 932, 949-50 (Bankr. E.D. Tenn. 1998); In re Marshall, 118 B.R. 954, 959-60 (W.D. Mich. 1990).  Each of these cases was decided under the precise circumstances present here, and each held such matters to be non-core. In reaching the opposite conclusion, the bankruptcy Court failed to distinguish these authorities in any meaningful way.

15

Instead, the bankruptcy Court held that this matter was core. To reach this conclusion, the Bankruptcy Court relied upon cases where it was held that a bankruptcy court had core jurisdiction over property issues within an existing bankruptcy case. What was not addressed in those cases, and what is addressed by the decisions cited above, is whether a pre-petition matter asserted in state court is transformed into a core proceeding when it is removed to federal court by the debtor. Those cases where the issue was squarely addressed uniformly hold that removal cannot make a non-core matter core.

The Bankruptcy Court's finding that this was a core proceeding also threatens to expand the limited jurisdiction of the bankruptcy courts beyond that permitted by the United States Constitution. In Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982), the Court held the 1978 amendments to the Bankruptcy Code unconstitutional because the grant of judicial power to Article I Bankruptcy Courts violated the separation of powers doctrine by undermining Article III's establishment of an independent judiciary. In Halper, the Third Circuit noted that the Bankruptcy Code's distinction between core and non-core proceedings was Congress's response to the constitutional concerns raised in Marathon, and was the means by which to limit Bankruptcy Court jurisdiction. Halper, 164 F.3d at 835-836.

The Bankruptcy Court's decision in this case eviscerates the distinction between core and non-core matters, and should be reversed accordingly. Since the Emergency Petition was non-core, mandatory abstention was required, and the Bankruptcy Court should have yielded its authority to the Commonwealth Court of Pennsylvania.

---

[8] Indeed, this matter was properly before the Commonwealth Court before being removed to federal court in the Eastern District of Pennsylvania.

114582.01600/11313184v4

**B.     The Commonwealth Court Will Timely Adjudicate This Matter**

The bankruptcy Court found that "the parties are likely to receive timely determination" of this matter in the Commonwealth Court.  (DR 13, p. 32).  That finding of fact is reviewed for clear error.  See In re Trans World Airlines, Inc., 145 F.3d 124, 131 (3rd Cir. 1998).

The record clearly demonstrates that the Commonwealth Court can timely adjudicate this case.  (DR 10, Ex. B); (DR 13, p. 32); Commonwealth Court Internal Operating Procedures, codified at 210 Pa. Code §§ 67.1 – 67.56.

Since this matter is a non-core proceeding and could be timely adjudicated in the Commonwealth Court, all of the elements for mandatory abstention are present.  Thus, the Bankruptcy Court's decision should be reversed and this case should be remanded to the Commonwealth Court for proper disposition.

**III.     This Court Should Remand This Action Because The Emergency Petition Was Not An Independent Matter Capable Of Removal, And RGH Lacked Standing To Remove It**

Section 1452 permits removal only of a "claim or cause of action," and only a "party" may remove such action under the section.  The Emergency Petition is neither a claim nor a cause of action, and remand is appropriate on such ground alone.  However, because RGH also is not a party capable of removing the Emergency Petition, remand is appropriate on this basis as well.

The Emergency Petition is a motion, filed within a civil action, seeking a determination regarding an order issued by the Commonwealth Court.  The "claim or cause of action" under section 1452 was the Petition for Rehabilitation filed on May 29, 2001.  That claim was resolved on May 29, when the Commonwealth Court entered an Order placing Reliance in Rehabilitation.  Moreover, the Emergency Petition sought only a declaration from the Commonwealth Court that the insurance proceeds at issue were subject to the terms of the Order of Rehabilitation.  The

17

Liquidator is not aware of *any* instance, other than the decision by the bankruptcy Court in this matter, in which any court permitted removal of a petition or a motion under § 1452.

However, even if the Court were to find that the Emergency Petition is a claim or cause of action capable of removal under section 1452, RGH nevertheless lacked standing to properly remove it.  RGH is not a party to the underlying action, and therefore cannot be a party to the Emergency Petition.  While section 1452 does not contain a definition of the term "party," in other contexts, courts have simply applied its plain meaning:  either a plaintiff, a defendant, or an intervenor.  In United States v. United Technologies Corp., No. 3:94-CV-2063 (EBB); 1999 WL 464536 (D. Conn. June 3, 1999), for example, the Court applied the "plain meaning" of the  term "party" in 31 U.S.C. § 3730, and held that the term means only those *by or against whom a lawsuit is brought*, or one who intervenes (which RGH chose not to do in this matter)  Id. at *7.  Others affected by a lawsuit are interested persons, but not parties.  Id.

Likewise, in Banks v. Rockwell Int'l North American Aircraft Operations, 666 F. Supp. 1053 (S.D. Ohio 1987), aff'd, 855 F.2d 324 (6th Cir. 1988), the Court applied the same "plain meaning" to the Title VII requirement of a, "party plaintiff or defendant."  Id. at 1058.

Application of the plain meaning of the term "party" here, would render RGH's removal under section 1452 improper as RGH is neither a party to this matter nor a third party intervener.  Accordingly, due to the inappropriateness with which this action was removed to the Eastern District, this Court should remand the matter back to the Commonwealth Court.

**IV.    The Bankruptcy Court Erred In Transferring This Matter To The Southern District Of New York Under 28 U.S.C. § 1412, Because The Matter Is Not a Core Bankruptcy Proceeding**

Since the Emergency Petition is not a core proceeding, the Bankruptcy Court erred in transferring this matter to the Southern District of New York, pursuant to 28 U.S.C. § 1412.

Section 1412 permits a district court to "transfer a case or proceeding *under title 11* to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412 (emphasis added). Most courts interpreting section 1412, including those of this judicial district, have held that section 1412 is *inapplicable* to matters that are only "related to" bankruptcy cases pending elsewhere. See, e.g., Ni Fuel Company, Inc. v. Jackson, 257 B.R. 600, 622-23 (N.D. Okla. 2000); Murray, Wilson and Hunter v. Jersey Boats, Inc., Civ. A. Nos. 91-7733, 91-7836; 1992 WL 37516, at *3 (E.D. Pa., Feb. 21, 1992); Tultext Corp. v. Freeze Kids, LLC, 252 B.R. 32, 35-36 (S.D.N.Y. 2000); Hurtubise v. Basil Waste Management, Inc., Civ. No. 94-154-P-H; 1994 WL 587733, at *1 (D. Me., Oct. 7, 1994); Searcy v. Knostman, 155 B.R. 699, 706-07 (S.D. Miss. 1993). "Related to" cases are not "core" proceedings under the Bankruptcy Code, and therefore do not arise "under title 11."

Courts have decided that "related to" cases are non-transferable under section 1412 for two reasons. First, the plain language of section 1412 requires this result, as it is clearly limited to cases "under title 11." See, e.g., Tultex, 252 B.R. at 35 (stating that "as the plain language of the statute suggests, § 1412 applies only to 'core' bankruptcy proceedings").

A second compelling justification for these decisions is that the predecessor to section 1412, 28 U.S.C. § 1475, expressly *permitted* transfer of matters "related to" Title 11 cases.[9] Congress removed the "related to" language when it amended this section and replaced it with section 1412. Section 1412 was enacted as part of the 1984 Bankruptcy Amendments, which as noted above, were Congress's response to the Supreme Court's Marathon decision. The 1984 Amendments were intended "to narrow the scope of the bankruptcy courts' jurisdiction by treating civil actions that are related to cases under title 11 differently from cases or proceedings

---

[9] Section 1475 provided:
  A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

arising under title 11." Jersey Boats, 1992 WL 37516, at *3 (quoting Goldberg Holding Corp. v. NEP Productions, Inc., 93 B.R. 33 (S.D.N.Y. 1988)).  Thus, the deletion of the "related to" language from the removal statute "is evidence of Congressional intent that motions to transfer actions that are related to title 11 cases should be controlled by 28 U.S.C. § 1404."[10]  Jersey Boats, 1992 WL 36516, at *3.

Accordingly, regardless of whether this matter was properly removed from the Commonwealth Court, it should not have been transferred to the Southern District of New York under section 1412, since the matter is not a core bankruptcy proceeding.  Consequently, this Court should overturn the bankruptcy Court's Order transferring this proceeding to the Southern District.

**V.     The Bankruptcy Court Erred In Declining to Remand This Matter On Equitable Grounds, Pursuant to 28 U.S.C. § 1452(b)**

Even were this Court to decline remand of this case under 28 U.S.C. § 1452(a), remand nevertheless would be appropriate on "equitable grounds," pursuant to 28 U.S.C. § 1452(b). Section 1452(b) provides that the "court to which such a claim or cause of action is removed may remand such claim or cause of action on *any equitable ground*."  28 U.S.C. § 1452(b) (emphasis added).  The "any equitable ground" standard for remand in section 1452(b) is a broad grant of authority that leaves the issues regarding whether remand is appropriate to the discretion of the courts.  See Grace Community, Inc. v. KPMG (In re Grace Community Inc.), 262 B.R. 625, 629 (Bankr. E.D. Pa. 2001); See also In re Raymark Industries, Inc., 238 B.R. 295, 299 (Bankr. E.D. Pa. 1999) ("Section 1452(b) invites remand on 'any equitable ground' and grants the court broad discretion to rule on the propriety of litigating a matter in federal court.").

---

[10] 28 U.S.C. § 1404 is the general transfer statute.  A court may only transfer an action under § 1404 to a district "where it might have been brought."  RGH has not sought transfer under § 1404, nor could it do so, since the

### A.    The Parties' Settlement Agreement

Recently, a compelling equitable ground for remand has developed in this proceeding. As discussed at greater length in the Liquidator's March 1 Motion, the parties to this suit have reached a settlement, in accordance with this Court's wishes, to litigate this case in the Commonwealth Court of Pennsylvania.  See March 1 Motion of Appellant M. Diane Koken, Ex. B.  Both the Bankruptcy court in the Southern District of New York handling the RGH bankruptcy, and the Commonwealth Court of Pennsylvania handling the Reliance liquidation, have approved the parties' Settlement Agreement.  See Id., Ex. C and D.  Accordingly, remand is appropriate on this basis along.  28 U.S.C. § 1452(b).

### B.    Other Equitable Considerations

In addition to the foregoing "equitable ground," many courts, including this Court, typically consider several factors in deciding whether to remand a case back to state court under 28 U.S.C. § 1452(b).  These factors include:

    (1)    effect on the efficient administration of the bankruptcy estate;

    (2)    extent to which issues of state law predominate;

    (3)    the difficulty or unsettled nature of applicable state law;

    (4)    comity;

    (5)    degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

    (6)    existence of the right to a jury trial; and

    (7)    prejudice to the involuntarily removed defendants

Grace Community, Inc. v. KPMG (In re Grace Community Inc.), 2001 WL 589462 at *3, n.6 (Bankr. E.D. Pa May 24, 2001); In re Raymark Industries, Inc., 238 B.R. 295, 299 (Bankr. E.D.

---

Emergency Petition could not have been brought in the United States District Court for the Southern District of New

114582.01600/11313184v4

Pa. 1999); In re Drexel Lambert Group, Inc. v. Visilant Ins. Co., 130 B.R. 405, 407 (S.D.N.Y.

1991).

An analysis of the seven factors outlined in Grace and more fully discussed in Raymark

and Drexel, clearly demonstrates that remand to the Commonwealth Court is appropriate, even in

the absence of considering the parties' Settlement Agreement.

> 1.    The Effect of Removal on the Efficient
> Administration of the Bankrupt Estate

As discussed *supra*, this matter is a non-core proceeding under the Bankruptcy Code.

The improper removal of this matter places a burden on the bankruptcy court to familiarize itself

with Pennsylvania Insurance Law and the priorities which conflict with and take precedence over

bankruptcy law.  See Drexel, 130 B.R. at 408 (retention of federal jurisdiction could detract from

efficient administration of the estate and impose unnecessary burden on bankruptcy court by

requiring it to expend time and resources on matters governed by state law); 9281 Shore Road

Owners Corp. v. Semerdle Realty Co. (In re 9281 Shore Road Owners Corp.) 214 B.R. 676

(Bankr. E.D.N.Y. 1997) (rather than requiring any special expertise of the bankruptcy court,

expertise of state court would effect a more efficient estate administration since state court

judges are more familiar with governing state law.)  McCormick v. Kochar, No. CIV. A. 99-

5045; 1999 WL 1051776 at *2 (E.D. Pa. Nov. 19, 1999) (equitable remand to state court is

appropriate because litigation involving tort claims will "neither significantly hinder nor

materially advance the efficient administration of the bankruptcy estate").

Removal creates substantial federalism concerns generated by forcing the Liquidator to

litigate exclusively state law claims in a federal forum, particularly where any compulsory

counterclaims is barred by the 11th Amendment.  Accordingly, the Liquidator vehemently

opposes the improper removal of this matter.  The delay caused by resolving these issues will

substantially hinder the efficient administration of the RGH bankruptcy estate and the orderly liquidation of Reliance.

The mere fact that a state or federal court action involving a debtor in possession may affect an asset of the estate is not a sufficient reason to warrant federal jurisdiction over this proceeding.  See Drexel, 130 B.R. at 408.  See also, Advanced Cellular Systems, Corp. v. Mayol, (In re Advanced Cellular Systems), 235 B.R. 713, 724 (Bankr. D.P.R. 1999) ("whether the [debtor] has a property right over [a] certificate of deposit is a question which must be addressed within the [state] liquidation proceeding").

In the instant proceeding, there are significant competing interests between the administration of the RGH estate and the liquidation of Reliance.  In such a situation, deferral to state courts is appropriate because insurance related matters pre-empt federal bankruptcy law in accordance with the McCarran-Ferguson Act.

**2.**      The Extent to Which Issues of State Law Predominate

The resolution of the this matter requires the interpretation of an order issued by the Commonwealth Court, involving an issue solely of state law.  In such circumstance, Commonwealth Court is better suited to resolve the controversy.  See S&S Family Partnership v. Abruzzo (In re Abruzzo), No. 99-14011DWS; 1999 W.L. 1271761 at *3 (Bankr. E.D. Pa. Dec. 28, 1999) (remand to Court of Common Pleas is appropriate because "such court has more experience and expertise in handling foreclosures; the bankruptcy court, by comparison, rarely, if ever, handles foreclosure actions").

**3.**      The Difficulty Or Unsettled
Nature of the Applicable State Law

The applicable state law to this matter deals with the Liquidator's statutorily required obligations to marshal the assets of the insolvent insurer's estate.  The Commonwealth Court is more experienced with the application and interpretation of this purely state law matter.  Even if

23

the Pennsylvania state law applicable to this proceeding is not unsettled or difficult to apply, the

Commonwealth Court is the more appropriate forum to decide this matter because the

Commonwealth Court is more familiar with applicable insurance law and state law doctrines.

See Montague, 209 B.R. at 301 (the simplicity of applicable state law is not a justification for

federal court to interject itself into the proceedings).  Therefore, on balance, this factor militates

in favor of remand to Commonwealth Court.

**4.**  Considerations of Comity

It is well settled that comity considerations dictate that "federal courts be hesitant to

exercise jurisdiction when state issues substantially predominate."  9381 Shore Road, citing

Citibank v. White Motor Corp., 761 F.2d 270, 277 (6th Cir. 1985), quoting United Mine Workers

v. Gibbs, 383 U.S. 715, 726 (1966).  Comity focuses on the state's interest in developing its

policy and applying its law to its citizens.  See In re Chicago, Milwaukee, St. Paul and Pac. R.R.

Co., 6 F.3d 1184, 1189 (7th Cir. 1993); Renaissance Cosmetics, Inc. v. Oleg Cassini, Inc No. 99

Civ. 11248 SHS; 2000 WL 890191 (S.D.N.Y. June 30, 2000).

As discussed in detail above, the Commonwealth Court should handle this proceeding

which implicates state law and regulatory issues exclusively delegated to the States by Congress.

See Drexel, 130 B.R. at 409, citing Mattingly v. Offshore, Ltd., 57 B.R. 797, 798-800 (D.R.I.

1986) ("Congress has made it plain that, in respect to noncore proceedings such as this (i.e. cases

which assert purely state law causes of action), the federal courts should not rush to usurp the

traditional precincts of the state court"); Marine Bank of Appleton, N.A. v. Mill-Craft Building

Systems, Inc. In re Mill-Craft Building Systems), 57 B.R. 531, 534 (Bankr. E.D. Pa. 1986). For

these reasons, comity favors remand of this matter to the Commonwealth Court.

**5.**  The Degree of Relatedness or Remoteness
of the Proceeding to the Bankruptcy Cases

This factor is neutral with respect to whether remand is appropriate.

24

**6.**    <u>The Right to a Jury Trial</u>

This factor is not applicable to the instant matter, and is thus neutral with respect to whether remand is appropriate.

**7.**    <u>Prejudice to the Involuntarily Removed Parties</u>

The Insurance Commissioner, along with Reliance's policyholders would be prejudiced if this matter is not remanded to the Commonwealth Court.  Pennsylvania Insurance Law clearly provides that a Liquidator has certain rights, powers, and obligations to regulate the business of insurance in the Commonwealth.  Matters concerning the regulation of the business of insurance are exclusively delegated to the states, whose courts are to administer such matters free from interference by federal statutes, including the Bankruptcy Code.  See <u>e.g.</u>, <u>Advanced Cellular</u>, 235 B.R. 713.

The retention of jurisdiction over this matter or the transfer thereof to the Southern District would prejudice the Liquidator because such retention of jurisdiction, rather than deferral to the Commonwealth Court, would override the public policy of state regulation of insurance which preempts federal law in accordance with the McCarran-Ferguson Act.  Accordingly, this factor counsels in favor of remand of this matter to the Commonwealth Court.

**VI.    The Bankruptcy Court Erred In Declining To Abstain From This Proceeding, Pursuant To Section 1334(c)(1)**

Should this Court determine that not all of the requirements for mandatory abstention are met, this Court should nevertheless exercise its discretion to abstain from this proceeding, pursuant to 28 U.S.C. § 1334(c)(1).  Indeed, courts have found that if most of the mandatory abstention factors are present, discretionary abstention is appropriate. <u>See</u> <u>Grace</u>, 2001 W.L. 589462 at *5, n.7; <u>In re Warren</u>, 125 B.R. at 132;

The discretionary abstention section, 28 U.S.C. § 1334 (c)(1), provides as follows:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The factors a court will consider when determining whether discretionary abstention is appropriate are the same factors utilized by courts when determining whether remand on equitable grounds under 28 U.S.C. § 1452(b) is appropriate.  Baker Healthcare Corporation v. Hemea Liquidation Trust, 132 B.R. 863, 868 (N.D. Ill 1991) ("the analysis of a subsection [§ 1334](c)(1) abstention is almost identical to the analysis conducted for a remand").  Thus because equitable remand is justified in this matter, as discussed *supra*, this Court should also exercise its discretion to abstain from hearing the matter.

## VII.   The Bankruptcy Court Erred By Refusing To Abstain From This Proceeding Pursuant to the Burford Abstention

Section 1334(c)(1) "imports the judicially-created doctrine of federal court abstention, specifically applying the doctrine to bankruptcy matters."  In re Wright, 231 B.R. 597, 600 (W.D. Tex. 1999) (citing Burford v. Sun Oil Co., 319 U.S. 315 (1943)) (additional citations omitted); see In re Earle Industries, Inc., 72 B.R. 131134 (Bankr. E.D. Pa. 1987).  Under the judicially-created Burford abstention doctrine, a federal court may decline to interfere with state proceedings where there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" or where the "exercise of federal review of the question in a case and similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  Colorado River Water Conservation District v. United States, 424 U.S. 800, 814 (1976)(relying on Burford, 319 U.S. 315).

Burford has frequently been applied in support of federal court abstention in favor of state insurance receivership proceedings  See Levy v. Lewis, 635 F.2d 960, 963 (2d Cir. 1980)

26

(explaining that "Burford abstention has been applied to state regulation of insurance"). The Second Circuit explained that "the administrative and judicial scheme erected by [the state] to regulate insurance companies, including that part enabling the institution and implementation of liquidation proceedings, operates pursuant to an express federal policy of noninterference in insurance matters." Id.

In the context of permissive abstention under § 1334(c)(1), Burford applies with equal force, providing ample equitable grounds for this Court to remand the removed actions under section 1452(b).[11] The Commissioner is charged with acting on behalf of the policyholders and the public to marshal the assets of the troubled insurer. See Foster, 587 A.2d at 385. The Emergency Petition is an important public and regulatory function involving the business of insurance, an area of law reserved exclusively to the states and protected from federal interference. In the interests of federalism and comity, a federal court should not interfere with Pennsylvania's exclusive regulatory authority over the business of insurance, particularly in the context of insurance insolvency proceedings where the Commissioner is attempting to protect the interests of innocent policyholders and the public. See Shubert v. Roche Holding A.G., 157 F. Supp.2d at 547 (remanding case removed to the bankruptcy court "out of respect for the state court system and considerations of federalism"); see also 40 P.S. § 221.1(c) (directing the Commissioner to safeguard the interests of the general public, as well as the policyholders and creditors of Reliance); In re Phillips Offset Co., Inc., 152 B.R. 836 (Bankr. S.D.N.Y. 1992).

---

[11]    Federal courts have observed that the doctrines of judicial abstention, including Burford, should be more liberally applied in Bankruptcy Court and that § 1334(c) was intended to reverse the federal court presumption against abstention in bankruptcy cases. See In re Hotel Mt. Lassen, Inc., 207 B.R. 935, 942 (E.D. Cal. Bankr. 1997); In re Republic Reader's Service, Inc., 81 B.R. 422, 425 (Bankr. S.D. Tex. 1987) (abstention "must play a far more significant role in limiting" bankruptcy court jurisdiction); c/f. Shubert, 157 F. Supp.2d at 546-47 (discussing that equitable remand is particularly appropriate under § 1334(c)(1) when the matters at issue merely relate to a bankruptcy proceeding).

The McCarran-Ferguson Act similarly applies, removing from federal consideration the regulation of the business of insurance. Finally, Pennsylvania has adopted a comprehensive and complex regulatory scheme governing the rehabilitation and liquidation of insurance companies and further regulating the holding companies of domestic insurance companies. "In light of the above factors, . . . [and] more significantly, [the fact that] the regulation of the insurance industry is an area of substantial public concern to the states[,]" Burford abstention is warranted in this matter. [12] In re Phillips Offset, 152 B.R. at 839; see Feige v. Sechrest, 90 F.3d 846 (3d Cir. 1996) (applying Burford abstention where no federal question was raised and the state law issue was closely intertwined with key provisions of the Insurance Department Act).

At its core, the judicially-created Burford abstention doctrine focuses on issues of federalism, comity and deference to the regulatory authority of the states. These are the same considerations listed in section 1334(c)(1), with its emphasis on comity with State courts and respect for State law. Thus, where abstention would be appropriate under Burford, abstention is similarly appropriate under section 1334(c)(1). Given the significant state interests implicated by the removed actions, discretionary abstention is appropriate in this case pursuant to 1334(c)(1). Accordingly, the Court should grant the Commissioner's motion to remand pursuant to section 1452(b).

---

[12] Even independently applying the four part test articulated in Phillips Offset, abstention is appropriate here. The removed matter is based exclusively on state not federal law. The matter involves issues of unusual state law, the requirements of the Pennsylvania Insurance Holding Companies Act and the Insurance Department Act of 1921, respectively. The instant matter would require this Court to determine issues directly relevant to state regulation of the business of insurance under the statutes previously mentioned. The McCarran-Ferguson Act prohibits federal authorities acting pursuant to Congressional enactments from interfering with state regulation of the business of insurance. Finally, as mentioned previously, the Pennsylvania legislature erected the Commonwealth Court in part to serve as a specialized forum for matters involving the liquidation of insolvent insurers. In re Phillips Offset, 152 B.R. at 838-39.

28

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should reverse the decision of the Bankruptcy Court

and remand this matter to the Commonwealth Court of Pennsylvania for resolution on the merits.

Respectfully submitted,


Dated:  May 6, 2004                              AV1772

_____

Jerome R. Richter
Ann B. Laupheimer
Anthony Vidovich
BLANK ROME LLP
One Logan Square
Philadelphia, PA  19103
(215) 569-5500 (Telephone)
(215) 832-5500 (Fax)

Attorneys for Appellant
M. DIANE KOKEN, Insurance Commissioner
of Pennsylvania, in her official capacity as
Liquidator of Reliance Insurance Company

29

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony Vidovich, certify that on this day a true and correct copy of the foregoing was served on all persons listed on the attached service list by either first class U.S. Mail, postage prepaid, or electronic means.

AV1772

_____
ANTHONY VIDOVICH

Dated: May 6, 2004

114582.01600/11313184v4

## SERVICE LIST

Eric S. Goldstein, Esquire
Liza M. Velazquez, Esquire
PAUL WEISS RIFKIN WHARTON &
    GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019
**Attorneys for Class Action Defendant Lowell
Freiberg**

Steven E. Obus, Esquire
Lisa A. Bauer, Esquire
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036
**Attorneys for Class Action Defendant
Saul P. Steinberg**

Alexander Kerr, Esquire
Lisa M. Salazar, Esquire
McCARTER & ENGLISH, LLP
1735 Market Street
Suite 700
Philadelphia, PA  19103
**Attorneys for Class Action Defendant
Robert M. Steinberg**

Andrew DeNatale
Jack Rose
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY  10036-2787
**Attorneys for the Official Unsecured Bank
Committee**

Arnold Gulkowitz
ORRICK HERRINGTON & SUTCLIFFE
666 Fifth Ave.
New York, NY  10103-0001
**Attorneys for the Official Unsecured
Creditors Committee**

Sherrie R. Savett, Esquire
Phyllis M. Parker, Esquire
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
**Co-Lead Counsel for Securities Class Action
Plaintiffs**

Robert A. Wallner, Esquire
MILBERG WEISS BERSHAD HYNES &
    LERACH LLP
One Pennsylvania Plaza
New York, NY  10119-0165
**Co-Lead Counsel for Securities Class Action
Plaintiffs**

Joseph M. Smick, Esquire
SEDGWICK, DETERT, MORAN &
    ARNOLD
125 Broad Street - 39th Floor
New York, NY  10004-2400
**Attorneys for Lloyds Underwriters**

Lorna G. Schofield
DEBEVOISE & PLIMPTON
919 Third Avenue
New York, NY  10022
**Attorneys for Debtor Reliance Group
Holdings, Inc.**

James M. Matour
HANGLEY ARONCHICK SEGAL &
PUDLIN
One Logan Square, 27th Floor
Philadelphia, PA  19103
**Attorneys for Debtor Reliance Group
Holdings, Inc.**

31